ANNABELLE A. EHRET, as Administratrix of the Estate of JOHN W. EHRET, Deceased, Respondent, *v.* THE VILLAGE OF SCARSDALE et al., Appellants, Impleaded with Another.

(Argued October 8, 1935; decided November 19, 1935.)

*Thorne Baker* for Village of Scarsdale, appellant. The trial court should have granted the defendant's motion to dismiss the complaint as to the village of Scarsdale at the close of the plaintiff's evidence. (*Levy* v. *Mayor*, 3 N. Y. Super. Ct. 465; *Howard* v. *City of Brooklyn*, 30 App. Div. 217; *Leonard* v. *City of Hornellsville*, 41 App. Div. 106; *Rogers* v. *City of Binghamton*, 101 App. Div. 352; 186 N. Y. 595; *Whittaker* v. *Village of Franklinville*, 265 N. Y. 11; *Stubley* v. *Allison Realty Co.*, 124 App. Div. 162; *Melker* v. *City of New York*, 190 N. Y. 481; *Cohen* v. *Mayor*, 113 N. Y. 532; *Von Lengerke* v. *City of New York*, 150 App. Div. 98; *Masterson* v. *Village of Mt. Vernon*, 58 N. Y. 391; *Hyman* v. *Barrett*, 224 N. Y. 436; *Dorr* v. *Town of Oyster Bay*, 84 Hun, 510; 158 N. Y. 731; *Fox* v. *Village of Manchester*, 183 N. Y. 141.) The trial court erred in admitting incompetent prejudicial testimony. (*Dudley* v. *Perkins*, 235 N. Y. 448; *Howard* v. *Norton*, 65 Barb. 161; *Edwards* v. *Dooley*, 120 N. Y. 540; *Stringham* v. *St. Nicholas Ins. Co.*, 37 How. Pr. 365; *Joseph* v. *Struller*, 25 Misc. Rep. 173; *Flannery* v. *15 West 44th St. Co.*, 193 App. Div. 63; *Herschcowitz* v. *Kleinman*, 227 App. Div. 62; *Mitchell* v. *Gennis*, 124 N. Y. Supp. 996; *Clark* v. *Salinger*, 153 N. Y. Supp. 219; *Sanford* v. *Fountain*, 49 Misc. Rep. 301; *Stubley* v. *Allison Realty Co.*, 124 App. Div. 162.)

*Daniel Miner, William S. O'Connor, Clyde Dart* and *James B. Henney* for Westchester County Small Estates Corporation, appellant. Plaintiff's intestate was a trespasser or bare licensee, without right of recovery even though the alleged negligence of appellant was in a public highway. (*Fairchild* v. *Leo*, 149 App. Div. 31; *Barker* v. *Gibralter Credit Corp.*, 234 App. Div. 773; *Bolden* v. *Independent Order of Oddfellows*, 133 Wash. 270; *Panken* v. *Holly*, 146 App. Div. 947; *Minnelli* v. *Marotta*, 212 App. Div. 834; *Mott* v. *Consumers' Ice Co.*, 73 N. Y. 543; *Timpson* v. *Allen*, 149 N. Y. 513; *Edwards* v. *Dooley*, 120 N. Y. 540; *Ridley* v. *National Casket Co.*, 161 N. Y. Supp. 444; *Berlin Mills Co.* v. *Croteau*, 88 Fed. Rep. 860; *LaPorta* v. *N. Y. Cent. R. R. Co.*, 224 Mass. 100; *Lar-*

*more* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Poock* v. *Strahl*, 237 App. Div. 842; *Fabisiak* v. *Empire Steel Partition Co.*, 228 App. Div. 665; *Mendelowitz* v. *Neisner*, 258 N. Y. 181; *Davenport* v. *Oceanic Amusement Co.*, 132 App. Div. 368; *Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *Alabama Fuel Co.* v. *Bush*, 204 Ala. 658.) No actionable negligence on the part of the Small Estates Corporation was shown. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *Garbard* v. *B. & M. R. R. Co.*, 76 N. H. 556; *Brenner* v. *L. E. & W. R. R. Co.*, 318 Ill. 11; *Akers* v. *Chicago Ry.*, 58 Minn. 540; *Murphy* v. *City of New York*, 89 App. Div. 93; *Morrison* v. *Hotel Rutledge Co.*, 200 App. Div. 636; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Woodruff* v. *Fisher*, 17 Barb. 224; *Giles* v. *Walker*, 24 Q. B. Div. 656; *Phalen* v. *Rae*, 168 N. Y. Supp. 139; 184 App. Div. 922; *United Transportation Co.* v. *Hass*, 171 App. Div. 971; 222 N. Y. 623.)

*Thomas F. J. Connolly, William D. Sporborg, Jr.*, and *Melville Ehrlich* for respondent. The trespasser rule invoked by the Small Estates Corporation has no application. (*Beck* v. *Carter*, 68 N. Y. 283; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Constantino* v. *Watson Contracting Co.*, 219 N. Y. 443; *Ferrari* v. *N. Y. C. R. R. Co.*, 224 App. Div. 182; 250 N. Y. 527; *Parnell* v. *Holland Furnace Co.*, 234 App. Div. 567; 260 N. Y. 604; *Cavanaugh* v. *Peoples Gas & Electric Co.*, 234 App. Div. 402; *Cleve* v. *Craven Chemical Co.*, 18 Fed. Rep. [2d] 711; *Moore* v. *Dresden Investment Co.*, 162 Wash. 289; *Hynes* v. *N. Y. C. R. R. Co.*, 231 N. Y. 229; *Wittleder* v. *Citizens El. Ill. Co.*, 50 App. Div. 478.) A municipal corporation is liable for injuries sustained by reason of a public nuisance, the creation of which it authorized, permitted or approved. (*Melker* v. *City of New York*, 190 N. Y. 481; *McNulty* v. *Ludwig & Co.*, 153 App. Div. 206; *Waldron* v. *City of Utica*, 228 App. Div. 37.) The village of Scarsdale is liable to the plaintiff. (*Schumacher* v. *City of New York*, 40 App. Div. 320; 166 N. Y. 103; *Lobravico* v. *City of New York*, 155 App. Div. 184.)

LEHMAN, J. On the morning of December 17, 1931, the dead body of the plaintiff's intestate was found in a vacant house, which had been erected and was still owned by the Westchester County Small Estates Corporation. The dead body of the night watchman, employed by the owner, was found there at the same time. Both had been asphyxiated by illuminating gas. The gas did not escape from pipes on the premises. It must have come there from a leak outside. The evidence permits, if, indeed, it does not dictate, the inference that the gas escaped from a leak in a gas main at a point under a village street more than four hundred feet from the house. The gas main belonged to the Westchester Lighting Company and had been placed in the street by it. In January, 1931, Westchester County Small Estates Corporation, for the purpose of draining the basements and foundations of houses built by it in that neighborhood, obtained a permit to place a twelve-inch tile pipe drain under the surface of the street. At the point in the street where the tile pipe drain crossed the gas main, the Westchester County Small Estates Corporation encased the gas main in its pipe drain. During the night of December 16 it became evident that at that point there was a leak in the gas main. Inevitably gas escaping from the gas main into the pipe drain would find exit into any sewer or drain connected with the pipe drain. After the discovery of the leak, the gas in the gas main was turned off but too late to prevent escape of the gas from such sewer or drain into the house where the dead bodies of the plaintiff's intestate and of the watchman were found, the next day. An explosion wrecked another house near the same street. Upon a finding by the jury that the death of the plaintiff's intestate was due to the negligence of the defendants, Village of Scarsdale and Westchester County Small Estates Corporation, in the construction of the tile pipe drain, judgment for the consequent damages has been entered against both.

The village of Scarsdale maintains and controls its streets. To the public using those streets it owes a duty to exercise care to keep them safe. It knows that, when it grants a permit to excavate the street, it sanctions the creation of a condition which may become a nuisance if the excavation is not properly guarded. If it authorizes or permits the creation of a nuisance, it is liable to a member of the public or to an abutting owner who thereby sustains damage. In issuing a permit for the opening of the village street and the construction of a pipe drain under its surface, the village of Scarsdale did not authorize the creation of a nuisance. The village acted within its rights, for the public benefit, in granting a permit for work which, if performed carefully and properly, would create no unreasonable danger to any person. Such danger arose only through the manner in which the work was performed, and the damage of which the plaintiff complains was not a result of the nature of the work which the village authorized, but flowed rather from the manner of its performance. The village did not perform the work, and any liability of the village must be based upon a finding that the village failed to perform some duty which the law imposes upon a municipal corporation charged with responsibility for the maintenance of streets and highways.

The cases in which liability of a municipal corporation has been sustained, for damages caused by the acts of a third party, in a public street, performed with the permission of the municipal corporation, may be divided into two groups. In the first group those cases fall in which the municipal corporation has joined in the creation of a nuisance by its attempted authorization of an act which is unlawful, regardless of the manner of its performance, or an act which, though otherwise lawful, has a natural tendency to create such danger of injury to person or property that it might properly be found a nuisance either as matter of fact or matter of law. (*Melker* v. *City of New York*, 190 N. Y. 481.) In such

cases, liability may be sustained even though the damages were, in fact, caused by the negligence of the person who received the permit, and the municipal corporation had no notice or knowledge of such negligence. There the primary wrong was the permission to create a nuisance, which the municipal corporation had no power to authorize, and all the damages may be regarded as the consequences of that primary wrong.

In the second group those cases fall in which the municipal corporation granted a permit for work in its streets which was lawful, when authorized by the municipal corporation, and by its nature created no unreasonable danger of injury to person or property; but which became a nuisance thereafter or otherwise caused injury to person or property through the negligent manner in which the work was performed, and the city had knowledge or was charged with notice of the existence of the dangerous condition or of the negligent manner in which the work was performed. (*Parks* v. *City of New York*, 111 App. Div. 836; affd., 187 N. Y. 555; *Saulsbury* v. *Braun*, 223 App. Div. 555; affd., 249 N. Y. 618.) There the municipal corporation commits no wrong in granting the permit, and it is not responsible for the negligent acts of the person who has received the permit. It is responsible only for its own negligence in the maintenance of the street after it has notice of the existence of a danger therein. (*Masterton* v. *Vil. of Mt. Vernon*, 58 N. Y. 391.)

These distinctions are well established and run through all the cases. They are not challenged here. The permit of the village of Scarsdale to open the street and lay the drain under its surface was not, in itself, a wrong. The village is not liable unless it is charged with notice of negligence in the manner in which the work was performed or of danger arising therefrom. The village, when it gave the permit, had notice of the nature of the work to be performed. It could not close its eyes to the fact that an excavation in its street, unless properly guarded, creates a danger to the wayfarers. To that

extent, a duty to inspect the work and to see that the public is properly protected, may reasonably be imposed upon the village. Here the death of the plaintiff's intestate occurred many months after the excavation was closed. It was due to interference with the gas main laid under the surface of the street, rather than to the excavation in the street. The village was under no duty to assure itself by inspection that the gas mains were properly laid originally, or that thereafter the mains were not negligently disturbed. There liability of the municipality exists only where it has notice of the negligence, or " the condition is apparent and the danger obvious." (*Fox* v. *Village of Manchester*, 183 N. Y. 141, 148.)

It is said that here the village did, nevertheless, actually inspect the work, and that its inspector had notice that the work was negligently performed. It is true that the building inspector of the village did at times inspect the work, and there is evidence that he was told that the employees of Westchester County Small Estates Corporation intended to encase the gas main in its drain pipe at the point where the line of drain pipe crossed the gas main. It is also true that there is testimony that such construction is not in accord with good engineering practice because its obvious result is to reduce the capacity of the drain pipe. We assume, though that is disputed, that the building inspector was authorized to inspect and approve this method of construction. Even upon that assumption it does not follow that the village would be responsible for error made by him. The village was, as we have said, under no duty to the public to see that the gas mains are properly constructed. Notice to the building inspector of the manner in which the gas main would be encased at one point in the drain pipe was not notice of a condition which would create an obvious danger. The undisputed testimony is that such construction, though not in accord with good engineering practice, was not unsafe. The danger arose only from a leak in the gas main at that point, and the village had

no notice that the gas main had been previously injured by careless handling or that there was any reasonable probability that a leak would develop at that point thereafter. It may be charged with notice of conditions which would have been apparent upon such inspection as it actually made or which it should have made in the performance of its duty to maintain the street in a reasonably safe condition (*Schumacher* v. *City of New York,* 40 App. Div. 320; affd., 166 N. Y. 103), but here the village did not inspect the gas main to discover possible leaks, and was under no duty to make such inspection. It follows that the complaint against the village should have been dismissed.

The situation of the Westchester County Small Estates Corporation is different. It undertook to do the work of constructing the drain, and it is responsible for the negligence of its servants and employees in the performance of that work. There is evidence that in the course of the work a laborer struck the gas main, and thereafter, without taking any steps to repair the consequent injury, the defendant's workmen encased the injured main within the drain pipe, although they had notice that the gas main had been injured. The evidence justified a finding by the jury that the leak in the gas main within the drain pipe was caused by the careless acts of the workmen, and that the death of the plaintiff's intestate was the result of that leak. If the Westchester County Small Estates Corporation owed any duty of care to the plaintiff's intestate, then it is liable to the plaintiff for the damage resulting from its negligence.

In applying for the permit to open the street and lay a pipe drain under its surface, the defendant voluntarily assumed the duty to exercise reasonable care in the performance of its work. Even if that duty were not voluntarily assumed, the law would impose it upon the defendant. Where, through the exercise of foresight, a reasonably careful person might anticipate danger to person or property, such danger may not be disregarded

with impunity. " The orbit of the danger as disclosed
to the eye of reasonable vigilance would be the orbit of
the duty." (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y.
339, 343.) The duty is owed to all who come within the
zone of the danger, and for damages suffered through
disregard of the duty, the injured person is entitled to
compensation.

In this case it is plain that by the exercise of reasonable
vigilance, the defendant might have anticipated that gas
might leak from a break in the injured gas main at the
point where it was encased in the pipe drain, and that the
escaping gas might find its way into a public sewer or a
farm drain in the street and from there into houses along
the street, and endanger life or property in such houses.
Ordinary foresight would suffice for that, but no foresight,
however extraordinary, would have enabled the defendant
to determine when, where or how such injury would occur.
The orbit of danger was undefined, both in time and
space. In fact, no damage resulted from the negligent
act for almost a year, and then the damage occurred
almost simultaneously in two separate houses at con-
siderable distance from each other and from the point
of the leak. None the less, the damage was the result of
a danger which could have been anticipated by the exer-
cise of reasonable foresight.

The defendant claims that even though all this be true,
the plaintiff cannot recover, because the decedent was a
trespasser and, therefore, outside the range of any duty
which the defendant may have owed to others. The
plaintiff has produced no evidence to explain the presence
of the decedent in the defendant's house. Though the
trial judge submitted to the jury a question of whether
the decedent was there upon the implied invitation of the
defendant, the evidence fails to show any facts which
would support an inference that the decedent was there
upon the invitation of the defendant, or even with the
knowledge or permission of the defendant. We assume
upon this appeal that the plaintiff's intestate's death

occurred while he was technically a trespasser upon the defendant's property. The question then arises whether through that fact the defendant gains immunity for damages resulting from its lack of care.

Doubtless, at times, the relationship of parties may determine both the duty of one to the other and liability or immunity for wrong done. So an occupier or owner of land owes varying duties to trespassers, to licensees, and to persons upon the land on his invitation. " Toward mere trespassers or bare licensees the rule is well settled that the only duty owing to them by the owner or occupier of land is to abstain from inflicting intentional, wanton or willful injuries." (*Mendelowitz* v. *Neisner*, 258 N. Y. 181, 184.) That was said in a case where a trespasser was injured through the dangerous condition of the premises on which the plaintiff had entered without permission. That condition could cause injury only to those who come upon the land. An owner of land has a right to use his land as he sees fit, at least provided such use causes no danger to others. He may at his pleasure invite or exclude others. If without permission or exclusion, a stranger unlawfully intrudes upon the land, he voluntarily exposes himself to the risk of unsafe conditions existing thereon or of dangerous activities conducted there. (Cf. Pollock on The Law of Torts [13th ed.], p. 182.) In the present case the death of the plaintiff's intestate was due to a wrongful act of the owner of the land performed in a public street many months before the decedent trespassed upon the land. The rule that an owner of land is not liable to a trespasser upon his land for failure to exercise ordinary care should not be extended so far as to confer immunity upon the defendant for damages caused by his wrong under the circumstances shown here.

The rule of immunity of an owner of land for damages suffered by a trespasser has not been extended to cases where the injured person was a trespasser upon land of a person other than the wrongdoer. It has been confined,

at least in this State, to cases where a trespasser sought to enforce liability upon a landowner or occupier of land for an act or omission by him upon his own land which causes danger to persons coming upon his own land. Any ordinary use of land by its owner is lawful, except in so far as it causes danger or injury to persons present upon the land, and no person by unlawfully intruding upon the land of another, can, by his own wrong, change an act which would otherwise have been lawful into a wrong towards himself.

The question is not before us whether an owner of land is liable to a trespasser for an injury resulting immediately and directly from an act carelessly performed in a public street or other place, where the zone of danger is confined to persons then upon his land. (Cf. *Alabama Fuel & Iron Co.* v. *Bush*, 204 Ala. 658.) In this case, as we have said, the zone of danger was undefined both in time and space. Injury followed many months after the defendant's act was completed. Then the result was not only the death of plaintiff's intestate in a house owned by the defendant, but also the damage to a house not owned by the defendant. If the death of plaintiff's intestate had occurred while he was trespassing there, the plaintiff's right to recover would have been clear. The circumstance that at the time when the defendant's lack of care caused the death of plaintiff's intestate, the vacant house in which he was a trespasser would still be unsold and unoccupied, could not have been known to the defendant when it was working in the street. It did not affect the duty which the defendant then owed to all who might thereafter come within the zone of danger. The act was wrongful at the time it was performed. Liability for the wrong, it is urged, is escaped because accidentally it produced injury at a particular point in the zone of danger, and at a particular time, though liability for the same wrong would have been inevitable if injury had been produced at a different place or time. In a similar case we have said that " rights and duties in systems of living

law are not built upon such quicksands." (*Hynes* v. *N. Y. Central R. R. Co.*, 231 N. Y. 229, 233.) The construction of a pipe drain in a public street in a manner which created danger to person or property in nearby houses, constituted a wrong. For injury resulting at any time to any person within the zone of danger, the law gives redress. A trespasser in a house belonging to the defendant may have assumed the risk that the defendant's use of its land might endanger persons thereon. He did not assume the risk that such danger would arise from a condition existing several hundred feet away in the public street, heedlessly created by the defendant or any other person.

As to the village of Scarsdale the judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts, and as to Westchester County Small Estates Corporation the judgment should be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., concurs as to the village of Scarsdale, but dissents as to affirmance of judgment against Westchester County Small Estates Corporation, on the ground that the creation of the sewer was part of its activities intimately connected with the erection and ownership of the house and, therefore, that the mere location of the negligent construction away from but connected with the premises, where its effect was bound to be manifested, was not sufficient to change the general rule of liability to trespassers. (American Law Institute, Restatement of the Law of Torts, § 333.)

Judgment accordingly.