Eugene Schiermeier, Minor, by Theodore Schiermeier, His Father and Next Friend, Appellant, v. Mrs. Margaret Hoeffken et al., Copartners, Trading as Hoeffken Brothers Supply and Construction Company, Appellees.

Opinion filed March 1, 1941. Rehearing denied April 10, 1941.

McGLYNN & McGLYNN, of East St. Louis, for appellant; JOHN J. HOBAN, of counsel.

FARMER, KLINGEL & BALTZ, of Belleville, and BAKER, LESEMANN, KAGY & WAGNER, of East St. Louis, for appellees.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from the circuit court of St. Clair county, Illinois, in which court a motion for directed verdict on behalf of appellees (hereinafter called defendants), and against the plaintiff, was sustained by

such court, and the jury was directed to return a verdict in favor of defendants and against the plaintiff. It is from the judgment upon such verdict that the plaintiff appeals.

The cause was tried below on the amended complaint filed by plaintiff, in which the defendants were charged with negligence which resulted in plaintiff's injuries. Two additional counts were filed by plaintiff after the plaintiff's evidence had been submitted and prior to the allowance of the motion for directed verdict by the trial court. The additional counts which were filed were predicated on the so-called "attractive nuisance" doctrine, and on the charge that the defendants were guilty of wilful and wanton conduct toward plaintiff.

The facts, as disclosed from plaintiff's evidence which was presented in the trial court below, showed that the plaintiff was 11 years of age at the time of the accident which was made the basis of the action. In company with two other young children, the plaintiff had heard the noise of machinery at work on Main street in the city of Belleville where the defendant contractors were engaged in tearing up a street through the use of a certain steam shovel. It was shown that the children decided to go and watch the work which was being done by the defendant contractors. When they arrived at the street in which the defendants were tearing up and removing the brick, the plaintiff and his companions watched the work from a corner for a while and then walked up Main street and went up on a terrace of a lawn on certain private premises, facing on the street. They sat on the terrace, plaintiff sitting in the middle, with his sister and another little girl sitting on either side of him. The operations which were being conducted by the defendants, consisted chiefly of the use of a steam shovel to scoop up the bricks from the street and dump such bricks in trucks which were standing there. At times the scoop

shovel would become too full and bricks would fall over the side, while at other times the trucks would become too full and bricks would roll from the trucks into the street. It was shown that there was mortar on the street from between the bricks as they broke off, and sand and soft dirt were under the bricks. Some of the bricks which were laying in the street, as the result of falling from the trucks or the scoop of the steam shovel, were whole, and some were broken and of varied sizes. Defendants, in the process of tearing up the street, used a number of trucks. When a truck was loaded it would leave and another would take its place. One truck was standing with its motor running while it was being loaded by the steam shovel. After it had been loaded and sought to pull away, it could not get traction on the street on which the bricks and parts of bricks, and mortar and sand, had been spilled. When such truck sought to get away, the truck driver raced the motor and the wheels spun. It was shown that the wheels were equipped with dual tires on each side of the rear, and that the spinning of the wheels at a rapid rate, caused a portion of a paving brick to become wedged between the dual tires of one of the wheels and as it spun around, it acted as a slingshot, hurling a portion of a brick a distance of more than 30 feet from the street, up into the yard, where it struck the plaintiff with great force and caused very severe injuries to his skull. The force was so great that the brick was in the air from the time it left the wheel of the truck, until it hit plaintiff. After it struck the plaintiff, such half brick flew back into the driveway that runs along the west side of the yard in which plaintiff was sitting.

There was evidence that the agents of the defendants could observe the manner in which the work was being done, and that the driver of the truck in question was standing on the ground watching the operations and could see the brick and mortar being spilled

to the ground. The workmen could also see the children who were sitting in the yard watching the operations. One of plaintiff's companions testified that other children were in the yard when plaintiff and his two companions arrived and took their positions on the lawn terrace. They were not cautioned, warned, or admonished in any manner. It was also shown that defendants had placed a barricade across the street so that vehicular traffic could not enter upon the street, but there was no barricade in the vicinity where plaintiff was hurt, and the evidence was to the effect that there were no barricades along the sidewalk, or that the barricade referred to pertained to anything other than vehicular traffic. There was also evidence to the effect that a customary manner of doing the work in which the defendants were engaged, was to have a workman with a hand shovel clear away the debris from under the truck before it was moved. No such methods were used by defendants to remove or attempt to remove the debris before the truck was started, or before any of the other trucks would drive away. Plaintiff was shown to have suffered serious and permanent injuries.

At the conclusion of the testimony on behalf of plaintiff, the defendants presented a motion for directed verdict to find the defendants not guilty, principally on the theory that the plaintiff was an idler, trespasser, and mere "onlooker," and that the defendant owed plaintiff no duty. Defendants likewise contended that the doctrine of attractive nuisance had no application to the situation before the court, and that the evidence failed to show any breach of duty on part of the defendants. The trial judge sustained the contentions of defendants, and allowed the motion for directed verdict, and judgment was thereupon entered in bar of the action and against plaintiff for costs.

Plaintiff contends that the court erred in allowing such motion and in the entry of judgment, and sets

up as a basis for reversal that the acts of the defendants constituted actionable negligence in favor of plaintiff, and as against defendants; as well as the further contentions that the attractive nuisance doctrine is involved, and that defendants were guilty of wilful and wanton conduct. In view of what we have to say about the first of such contentions, it is unnecessary to consider either the contention with reference to the attractive nuisance doctrine, or the contention that defendants were guilty of wilful and wanton conduct.

On motion for a directed verdict, the evidence must be considered in the light most favorable to the plaintiff, and plaintiff must be given every reasonable intendment favorable to him (*Blumb v. Getz,* 366 Ill. 273; *Shutan v. Bloomenthal,* 371 Ill. 244). The question therefore arises, in connection with the determination of the rights of plaintiff as against defendants, of whether or not there was a duty on part of defendants to protect plaintiff from the injury of which he complains, and whether there was a failure on part of defendants to perform that duty, which resulted in such injury (*Overstreet v. Illinois Power & Light Corp.,* 356 Ill. 378).

In this connection it is contended by the defendants that the sole duty which they had to the plaintiff was to refrain from wilful and wanton injury to him, on the theory that plaintiff was a trespasser, idler, or a bare licensee, under the doctrine of such cases as *McDermott v. Burke,* 256 Ill. 401, and *Darsch v. Brown,* 332 Ill. 592.

It is noted that the injury to plaintiff was sustained while he was seated on premises which did not belong to defendants, or to plaintiff, and so far as the record establishes, as to which he was, at most, an invitee, but more probably, a licensee or trespasser. It is also shown by the record that defendants had no rights in the premises, and that their status in so far as the

premises in which plaintiff was seated at the time he was injured, was certainly no better than was that of plaintiff, so that if plaintiff is characterized as a licensee or trespasser in the premises upon which he was injured, the defendants must likewise be viewed as licensees or trespassers on such premises to the extent to which they entered the same when the brick which was thrown by the defendant's truck struck the plaintiff.

The problem before this court in determining whether or not defendants owed a duty to plaintiff, is dependent upon whether or not the rule which has been adopted in other cases (*McDermott v. Burke, supra; Darsch v. Brown, supra*), to the effect that the only duty to trespassers, idlers, and bare licensees is that of refraining from wilful and wanton conduct resulting in injury to them, is to be extended so that it may be set up as a defense by others than the owner of the property upon which the injury was sustained.

We have been cited to no Illinois case which has passed on the problem before this court, nor have we been able to discover any cases in this State which passed upon it directly. Defendants, in their brief in this court, do cite the case of *Peters v. Howenstein,* 5 Ohio App. 160, upon which they place great reliance. In that case, which was decided in 1916 and in which no precedents are cited, action was instituted for a recovery of damages for the death of an adult who was killed by the bursting of the boiler of a traction engine which was being operated in a lane near a field where decedent was standing at the time of the explosion. Decedent was shown to have come to watch the operation of the engine merely out of curiosity, and the Ohio Court of Appeals, without analyzing the problem with reference to the status of defendant as relating to the place where he was standing at the time of the accident, concluded that the only duty which such defendant owed to plaintiff's decedent was

the duty of not wantonly or intentionally injuring him. Such case, this court feels, cannot be taken as a precedent in the instant case in view of certain well-established principles which have been determined by other courts of record in which the problems for consideration here were given extensive and careful analysis.

In the case of *Fitzpatrick v. Penfield,* 267 Pa. 564, 109 Atl. 653 (1920), the Supreme Court of Pennsylvania had occasion to consider a problem which is very closely related to the one under consideration by this court. In that case the deceased was playing with a number of other children upon premises which did not belong to the defendant, and upon which the children were regarded as being trespassers. The defendant's property adjoined the property upon which the children were playing, and on defendant's property there had remained standing the wall of a building which had been destroyed by fire. As the result of a high wind a part of the wall fell onto the adjoining premises upon which the children were playing and killed three of the boys, including the decedent for whose death the action was instituted. It was contended by the defendant (as is likewise contended in the instant case), that there was no duty owing to the child, and that, therefore, defendant was not liable for the death of the child. The Pennsylvania court, after extensive and careful consideration, rejected that contention, and after finding that the failure to take measures to prevent the wall being blown over by the wind could constitute actionable negligence, stated, with reference to the contention that the deceased was a trespasser, "Assuming that the children were trespassers, the owners of the French lot (upon which they were injured) would not be liable short of wantonness or wilfulness, for anything that befell them while on these premises. . . . The defense of no liability for injury to a trespasser is personal to the owner of the

premises trespassed upon; it does not inure to the benefit of strangers to the title, adjoining owners, or other trespassers. When the wall fell, defendant, at that moment, became a trespasser. The circumstances present the case, technically, of a trespasser injuring another trespasser, and of the relative rights between the two. . . . A person cannot escape liability for negligence merely because the person injured is a trespasser, where, before the commission of the negligent act the presence of the trespasser was known to him, or ought to have been known, and by the use of ordinary care the defendant might have prevented the injury. One trespass will not justify another: 29 Cyc. 443, and many cases cited.''

The observations of the court in the Pennsylvania case are equally applicable to the facts in the instant case. The defendants did not own the property upon which the children were seated. At the moment, both plaintiff and defendants, ostensibly, were trespassers on such property—plaintiff, by his physical presence; and defendants, when the brick was thrown onto the premises where the plaintiff was seated. The fact that plaintiff was a trespasser, or a licensee, or an invitee, as to the premises upon which he was seated, is not available as a defense to defendants, who did not own such premises.

The Pennsylvania case referred to in this opinion, is not alone in its conclusion that the rule of immunity of an owner of land for damages suffered by a trespasser or licensee (except from wilful and wanton conduct) has not been extended to cases where the injured person was a trespasser upon the land of a person other than the wrongdoer. In the words of the New York Court of Appeals in the case of *Constantino v. Watson Contracting Co.*, 219 N. Y. 443, 114 N. E. 802, ''The rule invoked by the defendant applies only between the licensee and the owner of the land. It has no application between a licensee and strangers or

other licensees.'' Modifications of such rule have even been extended to a case where a corporation whose employees had been guilty of negligence in laying a pipe drain under a street so as to cause a leak in a gas main which was encased in the drain pipe, was held liable for the death from asphyxiation occurring almost 1 year later, even though the deceased was, at the time of his death from asphyxiation, a trespasser in a vacant house owned by such corporation, about 400 feet away from the leak in the main (*Ehret v. Village of Scarsdale*, 269 N. Y. 198, 199 N. E. 56).

If the plaintiff in the instant case, had been seated in his own yard, the fact that he was watching certain operations being conducted by the defendants would obviously not have deprived him of protection against negligent acts on part of defendants which would cause injury to him in his own yard. The rule recited in the many cases referred to by defendants, relating to trespassers, licensees, and ''onlookers'' could not have applied to him. There is nothing which arises from the fact that plaintiff was seated on premises belonging to a third party, and not to defendants, which deprives plaintiff of his rights as against defendants which would arise by virtue of negligent conduct on the part of such defendants.

It is, therefore, the conclusion of this court that the defendants owed a duty to plaintiff to refrain from negligent conduct toward him, and that the rule relating to owners of land, vis-a-vis, trespassers or licensees, is not applicable under the facts and circumstances in this case.

We must, therefore, conclude, under the facts, that plaintiff has presented evidence to sustain the allegations of his complaint, and that such facts entitle him to have his case submitted to a jury. We have not overlooked the defendant's contention that no negligence was shown in this case on part of defendants. The evidence, as we have stated heretofore, demonstrated that

the defendants were aware that bricks and parts of bricks, and loose mortar and sand, were falling to the street and had fallen to the street, under the wheels of the trucks. Evidence in the record indicates that the presence of the plaintiff was known, or should have been known, under the facts, to the defendants or their agents. The accident which occurred, or one of similar character, might reasonably have been foreseen by the defendants as a consequence of the spinning of the wheels of the truck to get traction. The facts, as presented in the record, are sufficient to entitle plaintiff to have a jury pass upon whether or not the defendants were guilty of negligence toward plaintiff (*Burruano v. Public Service Transp. Co.*, 7 N. J. Misc. 169, 144 Atl. 585; *Railway Express Agency v. Brown*, 25 Ala. App. 121, 141 So. 726).

The judgment of the circuit court of St. Clair county will, therefore, be reversed, and the cause remanded.

*Reversed and remanded.*