Jasen, J. (dissenting).
I dissent and vote to affirm.
The plaintiff, an employee of the New York City Transit Authority, was injured while driving a bus on an assigned route along Avenue U in Brooklyn. Plaintiff testified that on December 14, 1959, while proceeding east on Avenue TJ, he stopped to discharge a passenger at the 73rd Street intersection. Since a car was parked in the bus stop, he ‘[1] nosed the bus ’ ’ into the curb in front of the ear, so that its front was about nine feet from the 73rd Street intersection. In starting up, he observed traffic in both directions, and he ‘[1] proceeded to go about three or four feet when the bus went into and bounced up again, dipped me up and down. I bounced in the seat.” The hole plaintiff struck was approximately 36 inches long, 36 inches wide, and 12 inches deep. It was 9 feet from the curb and 13 feet from the middle of Avenue U, which was 50 feet wide.
Prior to the date of the incident, a permit had been issued to Ralph Tomasetti & Co. for the purpose of constructing a sewer in Avenue U from East 68th Street to Royce Street, and in 73rd Street from Avenue T to Avenue X, in addition to several other locations covering a wide area in Brooklyn.
In order to put in the sewer in Avenue U, an excavation was made prior to December, 1959. The trench was about 10 feet wide by about 14 feet deep in the center of Avenue U, about 5 feet each side of the center line of the street. In making the excavation for this trench in the center of Avenue U, no other part of Avenue U was excavated. .There were, however, three-foot wide trenches dug in Avenue U from the main line in the center *684 of the street to the curb, approximately every 40 feet, but none of these excavations were made in the vicinity of the hole that the plaintiff allegedly struck.
Another trench was dug down the center of 73rd Street across the intersection of Avenue U, also prior to December, 1959. The dimensions of this trench were approximately six feet in width and seven feet deep.
Pursuant to its contract with the City of New York, which required, inter alia, the temporary restoration of that part of the pavement which was removed during the excavation, Tomasetti backfilled and graded the trenches on December 1. A week later, the area was again graded. The two roads were not repaved at that time. Prom the time the area was regraded, until December 14, no additional work was done near the intersection of Avenue U and 73rd Street by Tomasetti.
Edward G-. Melvin, an employee of the City of New York in the capacity of Junior Civil Engineer, was the inspector on the Tomasetti job. His duties were to check “ everything that is going on, materials, forms. ’ ’ On the day the accident occurred, Melvin was “ around ” the area of Avenue U and 73rd Street. He did not remain constantly at that intersection, for he was also “ all over the place. Avenue U, West 70th Street, Avenue X, going all over the job.” The record is silent as to what time Melvin was ‘ ‘ around ’ ’ the intersection in question, and how long he remained in the area.
In addition to Melvin, the city chief inspector would stop ‘ ‘ by at least once a day ’ ’. Again, there is nothing in the record to indicate when he did stop by, if, in fact, he did on December 14.
City records indicated that three complaints had been received with regard to holes on Avenue U in April and August of 1959. These holes were, however, in the block between 73rd and 74th Streets. Also, investigation of even those complaints revealed only that the shoulders were in need of reshaping. That work was completed by the city prior to December 14.
The records also indicated that a telephone complaint was received by the Police Department on December 14, relative to the intersection of Avenue U and 73rd Street. The police records are silent as to the time the complaint was received and the conditions found upon checking out the complaint.
It is well established that the City of New York is under a nondelegable duty to use reasonable care in assuring the safety of *685 its streets. (See Ehret v. Village of Scarsdale, 269 N. Y. 198; Metzroth v. City of New York, 241 N. Y. 470; Satre v. City of New York, 265 App. Div. 263, 264.) “It is scarcely necessary to repeat here, what has often been said before, that a city is not responsible for every accident that may happen in its streets resulting in personal injuries. With the greatest vigilance and the utmost foresight there will still be accidents for which no one, in any legal sense, is to blame.” (Beltz v. City of Yonkers, 148 N. Y. 67, 69.)
Where the dangerous condition of its streets did not arise from its own activities[1], the city will be liable for negligence only if it has actual or constructive notice of the defective condition and thereafter acts unreasonably in failing to correct or safeguard the condition. (Clemmons v. Cominskey, 2 N Y 2d 958, affg. 1 A D 2d 933, 934; Orser v. City of New York, 193 N. Y. 537, 540; Farrell v. City of New York, 113 App. Div. 687; see, also, 2 Harper and James, The Law of Torts, § 29.7, pp. 1630-1631.)[2]
In my view of the record, the Appellate Division properly dismissed plaintiff’s complaint for failure of proof of notice, actual or constructive.
Plaintiff does not argue that there was direct evidence that a city employee had actually seen the hole prior to the accident. He relies, instead, on the rule that notice may be shown by circumstantial evidence. (19 McQuillan, Municipal Corporations, § 54.107; 42 N. Y. Jur., Notice and Notices, § 2; 66 C. J. S., Notice, §§ 5, 7.) With this conclusion I agree. But such evidence ‘ ‘ must be of that character which is convincing in establishing that notice in fact was given.” (McManus v. City of Watertown, 88 App. Div. 361, 364.)
Plaintiff certainly cannot base a finding of actual notice upon an inference that the city inspectors, who were not present at all times but rather ‘[1] were about ’ ’ the nearby Tomasetti work, actually saw the defect complained of. Aside from the fact that there was no evidence that the hole was caused by Tomasetti or related to its job, there is not a shred of evidence to show that *686 the hole, which was located about 15-20 feet from Tomasetti’s job, even existed at the time of the inspector’s visit. (Cf. James, Proof of the Breach in Negligence Cases, 37 Va. L. Rev. 179, 191-192.) Furthermore, there was no evidence that the hole existed long enough prior to the accident so that the inspectors should have discovered it in the course of checking Tomasetti’s work. (McDermot v. City of New York, 287 F. 2d 49, 50; cf. De Tankerville v. City of New York, 28 A D 2d 1099, mot. for lv. to app. den. 21 N Y 2d 643; see, also, 2 Harper and James, The Law of Torts, § 29.7, p. 1631, n. 31.)
The majority’s holding, that the temporary presence of a city inspector in a nearby construction area constitutes actual notice of defects in adjacent areas, is unreasonable and unsound. By its holding, the requirement of proof of notice in street and sidewalk cases has for all practical purposes become a nullity. For instance, police officers are charged with the duty of reporting defective street conditions. Since they are present on the city streets every day, is the city to be charged with actual notice, although no evidence is presented that a policeman actually saw the defect!
Nor can the plaintiff argue that the city had actual notice of the hole because of the citizen complaints it received. Assuming that there were holes in the roadway, rather than shoulders in need of reshaping as discovered by the city employees, this does not create a basis for an inference that the city had knowledge of the existence of the hole plaintiff struck on December 14. For the holes the citizens complained of in April and August were a block from the scene of the accident. Similarly, the call received by the police on December 14 cannot form the basis for an inference since the record is bare of any factual relation of it to the time and place the accident occurred.
It is difficult to understand how the majority can charge the city with notice of the hole in the street where the only evidence presented on that point is that an inspector, who denied seeing any hole, said he was ‘ ‘ around ’ ’ the area on several occasions, but disregarded completely plaintiff’s own testimony that he did not see the hole at the time he struck it or that he ever saw it during the three weeks he drove over the same area, six or seven times a day. Also, there were eight or nine other bus drivers on the same route who were available to testify if, in fact, there had *687 been a hole there for any significant length of time. No such evidence was offered.
Nor can the plaintiff argue that the city had constructive notice on the ground that the condition had existed for some time prior to the accident, since he made no such showing. (Metzroth v. City of New York, 241 N. Y. 470, 478, supra.)
Hence, I agree with the Appellate Division that there was no basis for an inference that the city had notice of the existence of the hole. Since the record is devoid of any basis to establish notice, the finding of negligence and liability against the defendant city was the result of guess, speculation or surmise, which, of course, is impermissible. (Lahr v. Tirrill, 274 N. Y. 112, 117.)
Accordingly, the order of the Appellate Division, insofar as it was appealed from, should be affirmed.
Order reversed, etc.

. Plaintiff does not argue that the city itself caused the defect.

. Notice would not be requisite to the city’s liability for a dangerous condition in a roadway, where such condition resulted from the work of a contractor, hired by the city. (Rupp v. New York City Tr. Auth., 15 A D 2d 800.) Plaintiff, however, does not argue this as the basis for his cause of action.