Chief Judge Breitel
(concurring in part and dissenting in part). I would reinstate the complaint against the City of New York for the negligent maintenance of its park fence all but abutting on the railroad yard with its overhead electric wires and boxcars used for play by children and adolescents. I would otherwise affirm the dismissal of the complaint against the various railroad defendants.
For the reasons indicated in my concurring opinions in Barker v Parnossa, Inc. (39 NY2d 926), and in Basso v Miller (40 NY2d 233), decided herewith, there is neither need nor desirability to work a wholesale abandonment of rules and principles in order to resolve the'issues in this and the cases being decided by the court at the same time. It is not in the grand tradition of the common law to do so. Most important, it is dangerous because abrupt departures in the development of the common law are not likely to be free of policy error and are disruptive of the law’s stability. Evolutionary development of the law continues to be the lodestar for judicial innovation in the law, burdened as it is by the braking process of stare decisis and the obligation to preserve predictability. Similar inhibitions, for obvious reasons, do not apply to the legislative process, where error may be summarily corrected.
On this view, this case too is resolvable justly and predictably by the principles applicable to child trespassers and the maintenance of public parks and in accord with the rules which have evolved in this State and a vast majority of the jurisdictions in the United States. This is provided, of course, that one is not improperly diverted by nomenclature and classification, which are but symbols at best of the realities to which the law must address itself.
To apply the principles already discussed in my concurring opinion in Barker v Parnossa (supra) it is appropriate to treat first with the liability of the railroad defendants. In the Barker case, the view was taken by me that the rules applicable to child trespassers elsewhere in the United States and restated in Restatement of Torts 2d, as it had indeed been restated in the first Restatement, were in fact applicable in this State, albeit never avowed.
The common-law rules governing the liability of a property *444 owner to a child, trespasser as formulated in section 339 of the Restatement of Torts 2d read:
"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
"(c) the children because of their youth do not discover the condition or realize the risk, involved in intermeddling with it or in coming within the area made dangerous by it, and
"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.”
Decedent was concededly a trespasser on the applicable railroad’s property. His status is not, however, dispositive. The railroad knew that children regularly left the city’s park through the fence and climbed onto the boxcars. Indeed, four children had previously been electrocuted in the same manner as Scurti; one child had been electrocuted only one month before. Thus, the railroad knew that children were likely to trespass on its property.
Moreover, in light of the four previous electrocutions, the railroad should have realized that, under the circumstances, the electric wires involved an unreasonable risk of death to trespassing children.
While there is no fixed age limit at which a child is presumed to realize the risk involved in intermeddling with a condition existing on the land, courts have generally denied liability when the child is over 14 years of age (see Attractive Nuisance—Age—Mentality, Ann., 16 ALR3d 25, 74-81; Prosser, Torts [4th ed], §59, at pp 373-374). Decedent was almost 15 years of age at the time of his death and had completed his first year of high school. One of his contemporaries testified that he was aware of the danger presented by the high-tension wires. While this is persuasive evidence that decedent should *445 have realized the dangers in playing on the boxcar, it would be essentially a question of fact whether he appreciated the danger presented by the overhead wires, provided however the other bases for liability existed (see Prosser, op. cit., at p 374 [a boy of high school age may reasonably be expected not to appreciate the danger of high-tension wires]).
In contradistinction to the Barker case (supra), the balance of the conflicting social policies of freedom to use one’s land and the desire to protect children must here be struck in favor of the railroad. The property was in constant, productive use as a railroad switching yard. Railroad police patrolled the area and chased the children when they could. The railroad could reasonably expect the city to maintain its fence and was under no duty to erect one of its own (Railroad Law, § 52). Under the circumstances, the only further precaution which could have been taken was to shut down the operations of the electric railway, which, in fact, was eventually done for reasons or on bases not developed. Thus, the utility to the railroad of maintaining the electric railway and the burden of eliminating the danger were great indeed when compared to the risk to the child involved (see Prosser, op. cit., at p 375). Hence, the trial court was correct in dismissing the complaint with respect to the railroads and the Metropolitan Transportation Authority.
The propriety of the dismissal of the complaint with respect to the city is, however, another matter. Decedent’s status as a trespasser on the railroad property is irrelevant (see Ehret v Village of Scarsdale, 269 NY 198, 208). The city owes to those who use its parks a duty of ordinary care against foreseeable danger (see, e.g., Caldwell v Village of Is. Park, 304 NY 268, 274). What degree of care is "reasonable” is ordinarily a jury question (id.).
In this case, the city was aware or should have been aware that children would come to its park, and, through holes in the fence and over a "well beaten” path, regularly would go onto the immediately adjoining railroad property to play on the boxcars. The fence separating the park from the railroad property was in an almost constant state of gross disrepair. No warning signs were posted by the city, nor was a park-keeper on guard regularly to prevent the fences from being cut or the children from going onto the railroad’s property. The accident in this case occurred around 4 p.m. on a June afternoon. Most important, the city was aware that four *446 similar accidents had occurred, and thus could reasonably foresee a recurrence of tragedy. Yet it took no precautions whatsoever. Hence, it was a question of fact, at the very least, whether the city failed to exercise reasonable care.
Accordingly, I vote to modify the order of the Appellate Division to reinstate plaintiff’s complaint against the City of New York and order a new trial, and otherwise affirm.