Shirley A. SHIDELER and Barnes, Hickam, Pantzer & Boyd, Appellants (Defendants Below),

v.

Mary Catherine DWYER, Appellee (Plaintiff Below).

No. 381S55.

Supreme Court of Indiana.

March 3, 1981.

Alvin E. Meyer, Richard L. Gilliom, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Lineback & Lewis, P. C., Greenfield, for appellants (defendants below).

Jon R. Pactor, Indianapolis, for appellee (plaintiff below).

PRENTICE, Justice.

This cause is before us upon the petition of the Defendants (Appellants), Shideler, et al. to transfer the cause from the Court of Appeals, First District, that Court having affirmed the denial by the trial court of Defendants' Motion for Summary Judgment by opinion at 386 N.E.2d 1211.

█ Transfer is now granted under Appellate Rule 11(B)(2)(c), in that there is a conflict between said decision and the decision of said Court in *Cordial v. Grimm,* (1976) 169 Ind.App. 58, 346 N.E.2d 266, in that the Court of Appeals, Third District, in *Cordial v. Grimm, supra,* held that the two year limitation statute Ind.Code § 34–4–19–1, was not limited to medical malpractice actions and is applicable to malpractice actions brought against members of the legal profession; whereas said Court, in the cause before us, held that it was not. We are in accord with the Court of Appeals, First District, upon this issue in its holding that the doctrine of ejusdem generis limits the application to the term "or others," as used in said statute, to others of the medical care community. Accordingly, *Cordial v. Grimm, supra,* is expressly overruled.

█ Nevertheless, the decision of the Court of Appeals, First District, herein is erroneous in that it held that, notwithstanding the occurrence of injury and damages, i. e. the existence of the plaintiff's right to sue the defendants, the statute limiting the time within which suit could be filed thereon did not commence to run until the entry of a judicial decree, in an action initiated by Plaintiff and to which the defendants were not parties, confirming the plaintiff's loss.

At the outset, it should be noted that the motion for summary judgment was addressed, in the main, to the issue of whether or not the action was barred by the statute of limitations and not to the issue of whether or not a named beneficiary under a will, who was disappointed by the failure of the gift occasioned by reason of the lack of professional competence of the lawyer who drafted the will, can maintain a malpractice action against the errant lawyer. Accordingly, that substantive issue is not before us, and we intimate no opinion thereon.

In California, a state that has recognized the right of the beneficiary to maintain such an action, it was held that the statute of limitations began to run at the death of the testator.

> "Under the alleged facts of this case, we conclude that the limitations period starts from the date that the cause of action accrues; namely the incidence of the testatrix' death when the negligent failure to perfect the requested testamentary scheme becomes irremedial and the impact of the injury occurs." *Heyer v. Flaig,* (1969) 70 Cal.2d 223, 225, 449 P.2d 161, 162, 74 Cal.Rptr. 225, 226.

█ Formerly, statutes of limitations were looked upon with disfavor in that they are invariably in derogation of the common law. "Now, however, the judicial attitude is in favor of statutes of limitations, rather than otherwise, since they are considered as statutes of repose and as affording security against stale claims. Consequently, except in the case of statutes of limitations against the government, the courts are inclined to construe limitation laws liberally, so as to effect the intention of the legislature." 51 Am.Jur.2d, Limitation of Actions § 50, (1970). Such statutes rest upon sound public policy and tend to the peace and welfare of society and are deemed wholesome. *Horvath v. Davidson,* (1970) 148 Ind.App. 203, 264 N.E.2d 328; *Sherfey v. City of Brazil,* (1938) 213 Ind. 493, 13 N.E.2d 568; *High et al. v. Board of Commissioners of Shelby County,* (1883) 92 Ind. 580, 589. They are enacted upon the presumption that one having a well-founded claim will not delay enforcing it. *In Re Hogan,* (1921) 75 Ind.App. 53, 129 N.E. 633.

■ The trial judge certified and the Court of Appeals found, on Defendants' Petition for Leave to Appeal an Interlocutory Order, that the order denying summary judgment involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case. Accordingly, leave was granted by the Court of Appeals for Plaintiff to appeal from the trial court order, pursuant to Indiana Appellate Rule 4(B)(5)(b). We do not disturb that grant.

The statement of the case, the facts and issues are as stated by Judge Lowdermilk, for the Court of Appeals and are as follows:

"STATEMENT OF THE CASE

"Defendants-appellants Shirley A. Shideler (Shideler) and Barnes, Hickam, Pantzer & Boyd (Barnes, Hickam) bring this appeal after the Hancock Circuit Court denied their motion for summary judgment. They contend that the professional malpractice action brought by plaintiff-appellee Mary Catherine Dwyer (Dwyer) is barred by statutes of limitation set forth in IC 1971, 34–4–19–1 (Burns Code Ed.) and IC 1971, 34–1–2–2 (Burns Code Ed.).

"FACTS

"Shideler is a partner in the law firm of Barnes, Hickam. In 1973 Shideler prepared a Will for Robert P. Moore. Moore, who executed the Will on October 8, 1973, died on December 14, 1973. Moore's Will, which was admitted to probate on December 21, 1973, included the following provision:

"'Clause 7.1(c); *Provision for Mary Catherine Dwyer.* I specifically direct Dominic L. Angelicchio to use his best efforts as long as he owns any shares of stock of Moorfeed Corporation, to cause the Corporation to continue the employment of Mary Catherine Dwyer until her retirement or her other service termination date, then from and after such date and

until her death, or the death of Dominie L. Angelicchio prior thereto, Dominie L. Angelicchio shall cause the Corporation to pay Mary Catherine Dwyer as a retirement benefit the sum of $500 per month.' (Original emphasis)

"Dwyer decided to terminate her employment in the fall of 1974. Her attorney discussed Clause 7.1(c) in Moore's Will with Shideler, who was then serving as attorney for Moore's estate. The estate and Angelicchio [1] took the position that Dwyer would have to meet the qualifications set forth in the profit-sharing plan of Moorfeed Corporation before she would be eligible for any benefits provided by Clause 7.1(c) of Moore's Will. Nevertheless, Dwyer submitted her resignation effective October 31, 1974.

"When Dwyer did not receive a payment for November 1974, she filed her petition on November 13, 1974, asking the Marion County Probate Court to construe the Will of Robert P. Moore. The Probate Court entered its decree on June 30, 1975, and held that Clause 7.1(c) of Moore's Will was '... null and void and of no effect because of its impossibility of performance. The language of said Clause 7.1(c) is merely precatory language. Such Clause 7.1(c) is directed to a corporation and a stockholder of such corporation cannot cause the corporation to perform the acts set out in said clause.'

"Dwyer filed her action against Shideler and Barnes, Hickam on June 29, 1977. She alleged, *inter alia*, that Robert P. Moore had intended for Dwyer to receive $500 per month in addition to other retirement benefits, and that Shideler and Barnes, Hickam, who prepared the Will for Moore, knew or should have known that Clause 7.1(c) would be held void.

"Shideler and Barnes, Hickam ultimately filed their motion for summary judgment, which the trial court denied.

---

1. Shideler and Barnes, Hickam note in their brief at page 14: "Angelicchio informed Dwyer prior to her resignation that it was the opinion of an attorney for the personal representatives of Moore's estate, whom Angelicchio had con- sulted, that Dwyer would not be entitled to any payments under Clause 7.1(c) of the Will should she carry out her intention to resign *at that time.*" (Our emphasis)

## "ISSUES

"The following issues have been certified to this court for consideration, pursuant to Ind.Rules of Procedure, Appellate Rule 4(B)(5):

"1. Is Dwyer's action barred by the statute of limitations set forth in IC 34–4–19–1?

"2. Is Dwyer's action barred by the statute of limitations set forth in IC 34–1–2–2?

"3. Do genuine issues of material fact exist in the case at bar?"

## ISSUE I

As previously stated herein, we have determined that IC 34–4–19–1 is not applicable. Because our decision herein is controlled by our determination of issues 2 and 3 favorable to Defendant's position, further treatment of Issue I is unnecessary.

## ISSUES II & III

Again referring to California authority where the right of an intended beneficiary to maintain an action against an attorney who mis-drafted the Will has been established, it has been there determined that the action is in tort. *Heyer v. Flaig, supra.*

"Applying the *Biakanja* [*v. Irving* (1958) 49 Cal.2d 647, 320 P.2d 16] criteria to the facts of *Lucas* [*v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685], the court found that attorneys incur a duty in favor of certain third persons, namely, intended testamentary beneficiaries. In proceeding to discuss the contractual remedy of such persons as the plaintiffs in *Lucas*, we concluded that 'as a matter of policy * * * they are entitled to recover as third-party beneficiaries.' (56 Cal.2d at p. 590 [15 Cal.Rptr. at p. 825, 364 P.2d at p. 689].) The presence of the *Biakanja* criteria in a contractual setting led us to sustain not only the availability of a tort remedy but of a third-party beneficiary contractual remedy as well. This latter theory of recovery, however, is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negli-

gence. This reading of *Lucas* is reinforced by the following language recited with approval in the case of *Eads v. Marks* (1952) 39 Cal.2d 807, 811, 249 P.2d 257: 'It has been well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu, but if it arises *from a breach of duty growing out of the contract* it is ex delicto. * * * ' "

Plaintiff's complaint, as amended, was in five counts or theoretical paragraphs. After alleging the relevant facts, Plaintiff alleged conclusions charging: (1) breach of contract, (2) negligence, (3) fraud, (4) constructive fraud and (5) breach of fiduciary duty. Such method of pleading, however, will not control the limitations period.

Courts have consistently rejected efforts to make substantive limitations analysis under modern procedures, such as the Trial Rules, turn on formalistic pleading conceptions reminiscent of the Field Code era. In *Koehring Co. v. National Automatic Tool Co.* (S.D.Ind.1966), 257 F.Supp. 282 (Indiana law), aff'd per curiam (7th Cir. 1967), 385 F.2d 414, Judge Dillin aptly summarized the current rule:

"The general rule is that, especially where forms of action have been abolished, as in Indiana, *it is the nature or substance of the cause of action, rather than the form of the action, which determines the applicability of* the statute of limitations." 257 F.Supp. at 292. (Emphasis added)

In *Cordial v. Grimm*, (1976) 169 Ind.App. 58, 346 N.E.2d 266, the Court of Appeals endorsed this language in responding at length to an effort by the plaintiff to characterize his action as sounding in "contract" for limitations purposes:

"The [earlier] Indiana cases which directly deal with this question were decided in the era of Field Code pleading." (Citations omitted). "At this time, each pleading paragraph of a complaint was required to contain sufficient averments of fact within itself to reveal the theoretical nature of the cause of action to the

court." (Citations omitted). "In those cases, our courts determined the question of the nature of an action such as the case at bar by reference to the theory stated in the complaint." (Citation omitted).

"*However, under our present Indiana Rules of Procedure, a party commencing a civil action is required to include in his complaint only a demand for relief.* Trial Rule 8(A), Ind.Rules of Procedure. *The complaint need not disclose the general legal theory upon which the plaintiff will proceed,* but rather only the operative facts involved in the litigation. *State v. Rankin,* (1973) 260 Ind. 228, 294 N.E.2d 604.

"In conformity with these principles, appellant alleged in his original and amended complaints the facts constituting the alleged malpractice by the appellees, and omitted any reference to his legal theory of the action. *In ruling on appellees' motion for summary judgment, however, the trial court was required to determine what statute of limitations was applicable to the cause of action stated by appellant by determining the legal basis of the action.*" Id. at 62, 63, 346 N.E.2d at 269. (Emphasis added).

After quoting with approval Judge Dillin's formulation in *Koehring Co.* of the "general rule," the court concluded in *Cordial*:

"*Today a dominant trend in the law, as exemplified by our present Indiana Rules of Procedure, is the recognition of substance and the disregard of mere form.* The general rule quoted hereinabove serves this end. Furthermore, the older Indiana case law authorities now under consideration are of dubious vitality, due t) the language of subsequent decisions." (Citation omitted).

"*Thus, it is both necessary and appropriate under the current state of the law for the trial court to rule upon the legal nature or substance of a cause of action when the applicability of a statute of limitations to such cause of action is in issue.*" (Emphasis added). Id. at 63, 346 N.E.2d at 269–70.

In *Luxurious Swimming Pools, Inc. v. Tepe,* (1978) Ind.App., 379 N.E.2d 992, the Court of Appeals once more affirmed that legal substance rather than pleading form is the governing principle of limitations analysis. The plaintiff had sued and won a judgment against defendant contractor for improper construction of a swimming pool in plaintiff's backyard. Defendant contended that, since plaintiff had included in his complaint various breach-of-warranty theories arising under the Uniform Commercial Code, a four-year limitations period set forth in the Code governed and barred the action. This Court rejected defendant's argument, because the substance of plaintiff's action was for damages caused by deficiencies in making improvements to real property, and was thus governed by the ten-year period of Ind.Code § 34–4–20–2 (1976):

"* * * [I]t is the existence of an injury to real property brought about by the specified deficiencies, *rather than the cause of action under which a recovery for such action is sought,* which governs the applicability of [this] statute [of limitations]." (Emphasis added). 379 N.E.2d at 995 n. 2.

■ In short, though parties confronted with a limitations problem often attempt, as Plaintiff has attempted here, to evade such difficulties by reliance upon pleading technicalities, the courts have consistently rebuffed these efforts in favor of substantive analysis. Particularly in view of the heightened emphasis on substance and the disregard of mere form which the Trial Rules demand, it is clear that such formalistic pleading arguments no longer merit serious attention. With respect to the Complaint herein, the number and variety of Plaintiff's technical pleading labels and theories of recovery cannot disguise the obvious fact—apparent even to a layman—that this is a malpractice case, and hence is governed by the statute of limitations applicable to such actions.

Our statutes of limitations, in-so-far as they conceivably could be applicable, are:

"The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.

"First. For injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute, within two (2) years: * * *." I.C. § 34–1–2–2.

"All actions not limited by any other statute shall be brought within fifteen (15) years. In special cases, where a different limitation is prescribed by statute, the provisions of this act shall not apply." I.C. § 34–1–2–3.

In applying this statute and its predecessors, Indiana Courts have consistently viewed "personal property" in its broad and natural sense, and have rebuffed arguments for a narrow and technical interpretation of the term. The decision in *Rush v. Leiter*, (1971) 149 Ind.App. 274, 271 N.E.2d 505, is illustrative. The issue in *Rush* was whether a complaint for conversion of personal property was governed by: (a) the first clause of § 34–1–2–2; (b) § 34–1–2–1, the six-year statute for recovery of personal property; or (c) § 34–1–2–3, the fifteen-year "catch all" statute.

Reversing a judgment for Plaintiff, the Court of Appeals held that the trial court should have found the action barred by the statute for injuries to personal property, and rejected Plaintiff's contention that § 34–1–2–2 should be narrowly interpreted:

"Plaintiff-appellee urges this court to adopt the narrow and restrictive view of the contested phrase ['injuries to personal property'], thereby limiting its applicability to direct physical injury to tangible chattel property as distinguished from violations to rights in or to personal property or arising out of such injury. With this construction we cannot agree." 149 Ind.App. at 277–78, 271 N.E.2d at 507.

Although noting that some states had "limited the term so that it embraces only goods and chattels," the *Rush* Court cited numerous authorities establishing that Indiana has adopted the second, broader definition" of "personal property," which " * * * in-cludes not only the thing itself but all the rights and interests of the owner." 149 Ind.App. at 278, 271 N.E.2d at 507. (Emphasis added). Under this "broader definition," it was clear that the first clause of § 34–1–2–2 " * * * is not to be limited only to direct injuries to chattels, *but also incorporates violations to a person's rights and interests in or to such property*." 149 Ind. App. at 279, 271 N.E.2d at 508. (Emphasis added). Accordingly, the Court concluded that " * * * conversion of personal property is a violation of the true owner's rights in the same and the owner's action arising out of the conversion is a chose in action and thus personal property, (citation omitted)." Id.

Both the authority cited in *Rush* and decisions subsequent to it fully support the conclusion that the first clause of § 34–1–2–2 governs all actions involving claimed losses of "rights and interests in or to" personal property. Thus, in *Graf v. City Transit Co.*, (1942) 220 Ind. 249, 252, 41 N.E.2d 941, 942, we held that an action for loss of services is for injuries to property rather than as one for injuries to person. *Merritt v. Economy Department Store, Inc.*, (1955) 125 Ind.App. 560, 564, 128 N.E.2d 279, 281, reached the same result, holding that a husband's action for loss of services caused by injuries to his wife " * * * was a chose in action and thus personal property and would be governed by the statute of limitations of two years from the date of the injury."

In *Cordial v. Grimm*, supra, it was held that the principles expressed in these decisions were fully applicable to an action for legal malpractice. In addition to holding that the plaintiff's action was barred by the malpractice statute of limitations, a ruling that we have herein expressly rejected, the *Cordial* Court relied on the statute for injuries to personal property as an alternative basis for affirming the trial court's entry of summary judgment for the defendant attorneys:

"In the case at bar, the substance of the factual allegations which the appellant made in his complaint is that the

appellees' actions or inactions rendered his valid workman's compensation claim worthless.

*Such claim was a chose in action, and as such must be considered to have been the personal property of appellant.* (Citations omitted).

*It is the alleged tortious damage to such personal property which gave rise to appellant's cause of action, and it is for such damage that he sought compensation.*

In light of the foregoing, the trial court could have properly concluded that the provision of [Ind.Code § 34–1–2–2 (1976)] limiting the commencement of actions for damage to personal property was applicable to appellant's cause of action, *because such aspect of this case was the gravamen of the case. See, Rush v. Leiter,* (1971) 149 Ind.App. 274, 271 N.E.2d 505." (Emphasis added). Id. at 63–64, 346 N.E.2d at 270.

Under this clear and consistent line of Indiana authority, it is apparent that Plaintiff's action is one for injuries to personal property within the meaning of Ind. Code § 34–1–2–2. The damages Dwyer seeks are based upon her claimed loss of a chose in action whereby she was allegedly entitled to receive payments of $500 a month beginning November 1, 1974 and continuing thereafter until her death. Under any plausible analysis, a claim that one has lost a right to receive a specified monthly sum of money is, in the language of *Rush*, a claim for injuries to "rights or interests in or to" personal property, and is thus governed by the applicable two-year limitations period.

It having been determined that this case is controlled by Ind.Code § 34–1–2–2, a two year limitation upon actions for injuries to personal property, the date upon which the cause of action (if any) accrued, remains to be determined.

It is Plaintiff's contention that the cause of action did not accrue until June 30, 1975, the date upon which the probate court decreed that the gift to her, i. e. Clause 7.1(c) of Moore's will, was void. Until then, she

posits, she sustained no damage from the defendant's acts or omissions, because the court conceivably could have declared the clause to be valid. In support of her position, she cites *Price Adm. v. Holmes,* (1967) 198 Kan. 100, 422 P.2d 976, which did so indicate and misled our Court of Appeals. The threshold issue in that case was whether or not a cause of action against Holmes who negligently supervised the execution of Weber's will, would survive the death of the disappointed beneficiary, Lillian Price. The issues were drawn by a motion for summary judgment. Kansas procedure allowing for non-repugnant alternative pleading, the complaint was sufficient if it stated a cause in either contract or tort. It was Holmes' contention that a tort action was barred because it did not survive the death of the plaintiff's decedent, Lillian Holmes, and that a contract action was barred by the statute of limitations, which commenced to run when the employment contract was breached by his negligent performance.

From that point, the court rationalized to a conclusion that would permit the plaintiff to go forward. The tort concept of the case was equated to an earlier case wherein a defective installation of plumbing resulted in an explosion two years later. It was there held that no cause of action in tort accrued until the explosion occurred, the time the tortious act occasioned damage, but that an action on contract accrued when the faulty work was done. The court went on to say that the *explosion* in the case before it occurred when it declared Weber's will void. "That was the date on which the ground fell from under Lillian Price; prior to that time the will had been held valid by two courts, and Lillian had suffered no damage at the hands of Mr. Holmes." No cause of action in tort survived, for the simple reason that Lillian had died before that time; and a cause of action survives in favor of a personal representative, only if it accrued in favor of the decedent in his lifetime.

The remainder of the Price opinion has no application to the case before us as it proceeds upon a breach of contract hypothesis,

whereas we have determined that Plaintiff's claim for malpractice is in tort.

█ The fallacy in the Kansas opinion is the conclusion that there had been no injury done until the Supreme Court said so. Our Court of Appeals was led into the same trap but relegated the task of effecting the "explosion" to the Marion County Probate Court, overlooking the theoretical possibility that the injury might have been averted by appellate proceedings. It is clear, to us, that the Kansas Court and our Court of Appeals confused *damage*, as a requisite element of any tort with *damages* as a measure of compensation. For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred. Assuming that Defendants negligently set a potentially dangerous force into motion, the "explosion" occurred simultaneously with the death of Moore. That is the time when, but for the negligence complained of, the plaintiff would have realized a property interest.

The Kansas case of the plumbing explosion has an Indiana counterpart in *The Board of Commissioners of Wabash County v. Pearson*, (1889) 120 Ind. 426, 22 N.E. 134. That case concerned a bridge constructed in 1871 which collapsed and injured Pearson in 1884. It was there held that the statute of limitations did not commence to run until the right of action accrued and that that did not occur until Pearson was injured, although the defendant's negligence occurred thirteen years earlier.

It does not follow from that decision, however, that the cause of action did not accrue until the extent of Pearson's damages could be determined. In *Schwartz v. Heyden Newport Chem. Corp., et al.*, (1963) 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, 4 A.L.R.3d 814, amended on other grounds 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253, *cert. denied* (1963) 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032, the New York Court of Appeals held that a medical malpractice action accrued when the radio-active and carcinogenic substance was inserted in the plaintiff's sinuses, not fifteen years later when carcinoma allegedly produced thereby was first discovered. The court followed its earlier decision in *Schmidt v. Merchants Dispatch Transp. Co.*, (1936) 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450, where it was held that the cause of action accrued when he inhaled the dust—more than three years before the action was commenced—not at the time when the dust so inhaled resulted in a disease of the lungs, which date could only be determined by medical testimony.

"Though negligence may endanger the person or property of another, no actionable wrong is committed if the danger is averted. It is only the injury to person or property arising from negligence which constitutes an invasion of a personal right, protected by law, and, therefore, an actionable wrong. Cf. 'The Duty to Take Care,' by W. W. Buckland, 51 Law Quarterly Review, p. 637; Pollock on the Law of Torts (12th Ed.) p. 186. Through lack of care a person may set in motion forces which touch the person or property of another only after a long interval of time (Cf. *Ehret v. Village of Scarsdale*, 269 N.Y. 198, 199 N.E. 56); and then only through new, fortuitous conditions. There can be no doubt that a cause of action accrues only when the forces wrongfully put in motion produce injury. Otherwise, in extreme cases, a cause of action might be barred before liability arose.

"That does not mean that the cause of action accrues only when the injured person knows or should know that the injury has occurred. The injury occurs when there is a wrongful invasion of personal or property rights and then the cause of action accrues. Except in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. Consequential damages may flow later from an

injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise. So far as such consequential damages may be reasonably anticipated, they may be included in a recovery for the original injury, though even at the time of the trial they may not yet exist. When substantial damage may result from any wrong affecting the person or property of another, a cause of action for such wrong immediately accrues. *Conklin v. Draper*, 229 App.Div. 227, 241 N.Y.S. 529, affirmed 254 N.Y. 620, 173 N.E. 892; *Wiener v. Ellrodt*, 268 N.Y. 646, 198 N.E. 537; *Capucci v. Barone*, 266 Mass. 578, 165 N.E. 653.

"We must apply that rule here. The injury to the plaintiff was complete when the alleged negligence of the defendant caused the plaintiff to inhale the deleterious dust. For that injury, including all resulting damages, the defendant was then liable. The disease of the lungs was a consequence of that injury. Its result might be delayed, or, perhaps, even by good fortune averted; nevertheless, the disease resulted naturally, if not inevitably, from a condition created in the plaintiff's body through the defendant's alleged wrong. It cannot be doubted that the plaintiff might have begun an action against the defendant immediately after he inhaled the dust which caused the disease. No successful challenge could have been interposed on the ground that the action was prematurely brought because at the time it was commenced no serious damage to the plaintiff had yet developed. In that action the plaintiff could recover all damages which he could show had resulted or would result therefrom. In effect, the plaintiff is asking this court to hold that the statutory period of limitation begins only from the time that the plaintiff had reasonable assurance that serious damage had resulted or would result from past injury. The statute provides in unambiguous language that the period of limitation begins to run at the moment when right to begin an action accrues. The same test must be applied

to a challenge that the action is stale as to challenge that the action has been brought prematurely." *Id.* at 300–01, 200 N.E.2d at 827.

The drafting of Moore's Will and the resulting disappointment to Plaintiff may be likened to the construction of the bridge and its subsequent collapse in the *Pearson* case (supra). In both, the wrong preceded the damage by a considerable period of time. In neither, did the cause of action accrue until damage resulted from the wrong. In the case of the bridge, the damage occurred and the cause of action accrued when the bridge collapsed. That is when damage resulted to Pearson.

When did damage to Plaintiff result from Defendant's alleged negligence? Not when the Will was drafted or executed, because it had to await the death of Moore before it could have any dispositive effect. But at his death, the instrument was operative; and, just as the negligent construction of the bridge in *Pearson* became irremediable with its collapse under Pearson's weight, the wrong, if any, set in motion with the drafting of Moore's Will became irremediable with his death.

We agree with the following quoted holding of the Supreme Court of California in *Heyer, et al. v. Flaig*, (1969) 70 Cal.2d 223, 449 P.2d 161, 74 Cal.Rptr. 225. "*The statute of limitations does not commence to run until the testatrix' death, at which time the defendant's negligence becomes irremediable and before which time the plaintiff possesses no recognized legal interest in the testatrix' estate.*" *Id.* at 230, 449 P.2d at 165, 74 Cal.Rptr. at 229. And we agree with the following stated logic, also quoted from that opinion. "A second basic reason that bars the running of the statute until the testatrix' death lies in the fact that plaintiffs could not bring an action against defendant before that time. A statute of limitations does not commence to run until a cause of action accrues, and '*a cause of action * * * invariably accrues when there is a remedy available.*'" *Id.* at 230, 449 P.2d at 166, 74 Cal.Rptr. at 230. (Citation omitted).

We are not in agreement with the Supreme Court of Kansas in its determination that the "ground fell from under Lillian Price" on the date that it declared Weber's will void. According to that theory the plaintiff's cause in the case before us still has not accrued, as we have never been presented with the question of the validity of Moore's will.

Under the Kansas theory, the accrual of the plaintiff's action had to abate a determination of the validity of the will clause in a collateral action, which at most would be enlightening upon the question of the extent of her damages. Had the will clause been upheld, Plaintiff's damages would have been slight but not non-existent. The issue in her action here is not whether or not the will clause is valid but whether or not it was inartfully conceived and drafted by the defendants, in violation of a standard of care owing. The declaration of the probate court was a factor that figured in the extent of Plaintiff's damages, but it was not the explosion of the plumbing nor the collapse of the bridge. The explosion occurred when Moore died leaving a testamentary provision in favor of the plaintiff of questionable validity.

To be sure, the ultimate effect upon the plaintiff of the defendant's alleged negligence was speculative at the time the cause of action accrued, but it cannot be questioned that the impact occurred at the time of Moore's death. It is doubtful that the extent of Pearson's damages was known the instant that the bridge collapsed. It may never have been fully determined, and there may have been conflicting medical opinions as to whether he had sustained any. Nevertheless, if he was damaged, it occurred at the moment of the collapse; and if this plaintiff was damaged, it occurred at the moment of Moore's death. Whether or not the will was competently drawn was the issue to be tried in the court below. Whether or not the clause was ultimately held to be valid or invalid would weigh heavily upon that issue, but it would not determine it.

In *Craven v. Craven*, (1913) 181 Ind. 553, 103 N.E. 333, we quoted from an even earlier case, " 'Statutes of limitation are now generally looked upon as statutes of repose. They rest upon sound policy, and tend to the peace and welfare of society, and they are to be deemed just as essential to the general welfare and wholesome administration of justice as statutes upon any other subject.' * * * And while an injustice may be done in some instances, it is better for the sake of the peace and welfare of the State, that the rule should prevail, that adverse possession for twenty years will ripen into a title in fee simple." *Id.* at 559, 103 N.E. at 335.

"Considering the function of a Statute of Limitations as a device for repose, a potential defendant's equities are the same whether the plaintiff knows of his condition or not. Repose is as beneficial to society in the one case as in the other." *Schwartz v. Heyden Newport Chem. Corp.*, (supra).

There is authority supporting the proposition that statutes of limitation attach when there has been notice of an invasion of the legal right of the plaintiff or he has been put on notice of his right to a cause of action. *City of Miami v. Brooks*, (1954) Fla., 70 So.2d 306; *Urie v. Thompson*, (1949) 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, 11 A.L.R.2d 252. There may be special merit to that viewpoint where, as in *Neel v. Magna, et al.*, (1971) 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421, the plaintiff was the client or the patient, but we do not have that problem.

We also note that in many cases where the discovery rule has been applied or alluded to, the misconduct was of a continuing nature or concealed, which also was the situation in *Neel v. Magna, supra*.

We see no unique relationship between a lawyer who drafts a will and one who is merely the object of his client's bounty that calls for a special rule. Without more, there is no continuing obligation to the devisee.

In *Jaramillo v. Hood*, (1979) 93 N.M. 433, 601 P.2d 66, the court apparently adopted the discovery rule in a case very similar to

the one before us. But the court held that the appellant was in a position to ascertain or discover the harm when she changed attorneys. We infer from this that the appellee had represented the appellant in her capacity as devisee, and that the harm was discoverable when she ceased to rely upon the appellee. This case can give no comfort to Plaintiff, as the court rejected the appellant's claim that the cause of action did not accrue until the will was denied probate.

█ Plaintiff postulates, but without cogent argument, that the overruling of Defendant's motion for summary judgment was an implicit finding of genuine issues of material fact. Under the circumstances of this case, however, we do not perceive that to be correct.

On June 29, 1977, Plaintiff filed her Complaint in the Superior Court of Marion County against Defendants. In essence, Plaintiff Dwyer alleged that Moore intended that she be a beneficiary under his Will; that Defendants, in rendering their legal services to Moore, failed to carry out that intention; and that Plaintiff thereby lost the benefits of the testamentary annuity which Moore intended to provide for her benefit.

Following the allegations of fact, the Complaint proceeds on various legal theories set forth in five counts, as aforesaid.

Following change of venue to the Hancock Circuit Court, the parties engaged in discovery proceedings. Plaintiff filed and defendants responded to requests for admissions and two sets of interrogatories. Defendants took Plaintiff's deposition, which was filed and ordered published by the trial court. Plaintiff in turn took the deposition of Defendant, Shideler, which was filed and ordered published, and the deposition of J. Howard Williams ("Williams"), an executive at Moorfeed and a co-executor of the will, which deposition was filed June 26, 1978 and ordered published.

On May 23, 1978, defendants filed their Motion for Summary Judgment and supporting brief. Contemporaneously with fil-

ing the same, Defendants submitted summary judgment exhibits documenting some of the undisputed facts upon which the motion was based. These exhibits included: (a) the Will, (b) Plaintiff's Petition for Construction of Will Provision in the Probate Court of Marion County, (c) Plaintiff's post-hearing brief filed in that court, (d) the brief filed in that same proceeding by Domenic Angelicchio ("Angelicchio"), a Moorfeed executive and the residuary beneficiary of the Will, (e) an affidavit executed by Angelicchio, and (f) an affidavit executed by Defendant Shideler. The trial court then set Defendants' Motion for Summary Judgment for hearing on August 4, 1978.

Prior to the hearing on Defendant's motion, Plaintiff submitted to the trial court the transcript of the March 5, 1975 hearing held by the Probate Court of Marion County in her will construction suit. Thereafter, Plaintiff filed her Memorandum Opposing Defendants' Motion for Summary Judgment, attaching as exhibits thereto the petition for and order of probate of the will and an affidavit executed by Myron H. Budnick ("Budnick"), who had been her counsel in the proceedings for construction of the will in the Probate Court of Marion County.

On August 4, 1978, the Hancock Circuit Court held a hearing on Defendants' Motion for Summary Judgment. At the hearing, Defendants moved to strike as irrelevant and inadmissible under Trial Rule 56 that portion of Budnick's Affidavit which stated that, in his "opinion," Dwyer did not have a cause of action against Defendants until a time, less than two years prior to commencement of the present action. Defendants' counsel then summarized for the trial court the evidence in the record for summary judgment purposes, followed by a similar summary presented by Dwyer's counsel. Neither Defendants nor Plaintiff, however, offered any testimony or additional evidence at the hearing beyond that already in the record before the trial court on Defendants' motion. Following the hearing, the trial court heard argument of counsel and took the matter under advisement and overruled the motion.

Defendants then petitioned the trial court, on September 11, 1978, for certification for appeal of the order denying summary judgment, pursuant to Appellate Rule 4(B)(5); and on September 15, 1978, the trial court determined that it required additional research on the issues presented by Defendants' Motion for Summary Judgment, and on its own motion vacated and set aside its previous order denying summary judgment.

On September 22, 1978, the trial court held a hearing upon the petition for certification for appeal and took the matter under advisement. Thereafter, on October 2, 1978, it entered the following interlocutory order (omitting caption, title and formal parts), from which this appeal was taken:

The Court now being fully advised overrules the Motion for Summary Judgment filed herein by Defendants on May 23, 1978. The Court now finds and adjudges that this ruling and order involves a substantial question of law. The early determination of which will promote a more orderly disposition of the case and that an interlocutory appeal may be had from this order. [*sic*]

The Court further orders and adjudges that all further proceedings in this case shall be stayed until the termination of said interlocutory appeal.

Defendants' petition for certification for appeal addressed only matters relating to the issue of whether or not the Plaintiff's action was barred by either statute of limitations hereinbefore considered. We conclude from the trial court's grant of that petition that the denial of summary judgment was not occasioned by a finding of any genuine issue of fact material under any theory of the complaint but, rather, was by reason of the court's determination that, under the facts as established, the action was not so barred. We come to this conclusion because, otherwise it could not be said that an early determination of the issue presented by the order would promote a more orderly disposition of the case. Were there material issues of fact in existence on any theory of the complaint or any

theory in avoidance of the statute of limitations, the case could not have been resolved without a trial, and the certification for the interlocutory appeal would have been nothing more than a request for an advisory opinion, which the appellate courts of this state do not render.

■ We have, therefore reviewed the exhibits that were before the trial court upon the motion for summary judgment to determine whether or not there existed any genuine issue of fact relevant to any theory of the complaint. We have found no such issue upon any such theory. Therefore, notwithstanding Plaintiff's contentions throughout her briefs that the counts of her complaint alleging breach of contract, fraud, constructive fraud and breach of a fiduciary duty remain viable, regardless of an adverse determination upon the issue of the statute of limitations, we find that the Defendants are entitled to judgment, as a matter of law, upon those counts, as the exhibits disclose no facts supportive of any such theory.

If there were any basis for the charges under any of those theories, Plaintiff failed to present it in response to Defendants' motion. Trial Rule 56(E) provides, and our Court of Appeals has repeatedly held, that when a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading*, but his response, by affidavit or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial*. See, e. g., Cunningham v. Universal Battery Division—Yardney Electric Corp., (1976) 170 Ind.App. 166, 170, 352 N.E.2d 83, 86; Burcham v. Singer, (1972) 151 Ind.App. 1, 5, 277 N.E.2d 814, 816.

■ The party opposing summary judgment is obliged to disgorge sufficient evidence to controvert the moving party's assertion that there exists no factual issue to be tried. *Pan American World Airways, Inc. v. Local Readers Service, Inc.*, (1969) 143 Ind.App. 370, 240 N.E.2d 552.

■ Although we hold that a disappointed beneficiary's action, if any, would accrue simultaneously with the death of the testator and that the statute of limitations would then begin to run, we recognize that such statutes are subject to avoidance under certain recognized circumstances. Thus, the existence of a genuine issue of fact which, if found, would avoid the consequence of the statute would have precluded the grant of summary judgment. Accordingly, our review of the summary judgment exhibits was also made with a view to ascertaining the existence of any issue of fact relevant to any theory of such avoidance. Again, none was found. Thus, although arguably, the defendants' may not be entitled to summary judgment, as a matter of substantive law upon the negligence count of the complaint, they are, nevertheless, entitled to judgment thereon, as a matter of law, because under the facts, as established, the applicable statute of limitations was not tolled, and the complaint was not timely filed. Summary judgment is proper when there is no dispute or conflict regarding a fact that is dispositive of the litigation. *Letson v. Lowmaster*, (1976) 168 Ind. App. 159, 341 N.E.2d 785.

■ One final contention of Plaintiff should be disposed of. She argues, without supporting authority, that the defendants were required to raise the statute of limitations defense by a TR 12(B)(6) motion or by an answer and, that by their failure to do so, they have waived the defense. It has been logically held that such defense may be properly raised by a motion for summary judgment. *Horvath v. Davidson, supra.* In *Von Clemm v. Smith*, (S.D.N.Y.1962) 204 F.Supp. 110, 113, it was said, "A defense of the statute of limitations is peculiarly suitable as a basis for summary judgment."

The decision and opinion of the Court of Appeals are ordered vacated. The judgment of the trial court is reversed. The cause is remanded, and the trial court is directed to vacate its order denying Defendant's Motion for Summary Judgment and to grant the same as to all counts of Plaintiff's complaint.

DeBRULER and HUNTER, JJ., concur.

GIVAN, C. J., dissents with opinion in which PIVARNIK, J., concurs.

GIVAN, Chief Justice, dissenting.

I respectfully dissent from the majority opinion in this case.

I do agree with the majority in their statement that the order denying summary judgment was appealable, pursuant to Indiana Appellate Rule 4(B)(5)(b). I also accept the position of the majority in their finding that the action in this cause is in tort and that the two-year statute of limitations is applicable.

I dissent from the majority opinion as to when the statute of limitations began to run. In holding that the statute of limitations had not yet run, the Court of Appeals cited the case of *Price v. Holmes*, (1967) 198 Kan. 100, 422 P.2d 976. The majority opinion also cites the Kansas case, but takes the position that it is in error. The majority states, "The fallacy in the Kansas opinion is the conclusion that there has been no injury done until the Supreme Court said so." The majority takes the position that the injury occurs when the will is probated and that the named beneficiary in the will must within two years commence an action against the drafters of the will concerning any malpractice resulting in a detriment to the beneficiary.

The majority cites the case of *Schmidt v. Merchants Dispatch Transp. Co.*, (1936) 270 N.Y. 287, 200 N.E. 824, 104 A.L.R. 450. In substance, this case holds that a person inhaling dust which subsequently damages his lungs, must bring his cause of action within two years of his first inhaling the dust. The writers of the opinion observe that even though the effects of breathing the dust may not be known to the plaintiff for several years, he is nevertheless first impinged upon inhaling the dust and must bring his cause of action within the statute of limitations of that date.

I cannot accept this proposition of law, but in any event feel that it is not in point with the issues presented in this case.

The majority also cites the case of *The Board of Commissioners of Wabash County v. Pearson*, (1889) 120 Ind. 426, 22 N.E. 134. The case concerns the construction of a bridge in 1871 which collapsed and injured Pearson in 1884. The court held the statute of limitations did not commence to run until the right of action accrued and that did not occur until Pearson was injured by the collapse of the bridge, notwithstanding the fact that the negligence had occurred some thirteen years earlier. The majority draws what I perceive to be an erroneous parallel between that case and the case at bar. The majority takes the position that in the case at bar the impingement to the plaintiff first occurred when the will was probated. Thus, likening that incident to the incident of the collapse of the bridge. If we draw a parallel between the two cases, it would seem the negligence in constructing the bridge parallels the negligence, if any, in constructing the will. The probate of the will would parallel the opening of the bridge to traffic. The collapse of the bridge parallels the decision of the Probate Court in holding that the bequest to the plaintiff was void and of no force and effect. To hold otherwise places the beneficiary under a will in an impossible position. Upon probate of the will, he presumes he is to benefit under the will, thus he bides his time waiting for the proper authority to fulfill the bequest. Some time later, he learns that the administrator of the estate has no intention of fulfilling the bequest. He still takes the position the bequest is valid and institutes proceedings in the Probate Court for enforcement of the bequest. At this time his bridge is still standing, and he is taking the position that it is sturdy enough to support him in his position. He, of course, would take the position that the attorney who drafted the instrument drafted a perfectly valid instrument. It would be unthinkable for him at that time to bring an action against the attorneys for drafting a bad instrument. His bridge does not collapse until the Probate Court makes a decision that the bequest in the will is unenforceable, and that he will take nothing under the terms of the will. Only then

is he in a position to turn his attention to the drafters of the instrument which has failed him.

Even if it is assumed for the sake of argument that the impingement occurred when the will was probated, one must consider the "discovery rule" as applied to this case.

The majority seeks to bolster its opinion by citing *Heyer v. Flaig*, (1969) 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161. An analysis of *Heyer* and its progeny lead one to conclude that if the California Supreme Court were faced with the facts in the case at bar, it might well conclude that the statute of limitations did not begin to run until the challenged provision of the will was declared void.

One reason for concluding that the statute began to run upon the date of the death of the testatrix was because the plaintiff could not have brought an action before that time. "A statute of limitations does not commence to run until a cause of action accrues, and 'a cause of action * * * invariably accrues when there is a remedy available' ". *Heyer v. Flaig, supra* at 230, 74 Cal.Rptr. at 231, 449 P.2d at 166, quoting *Irvine v. Bossen*, (1944) 25 Cal.2d 652, 658, 155 P.2d 9, 13. Unlike the instant case, the negligence of *Flaig* was discoverable upon the death of the testatrix. The Heyer sisters alleged that the testatrix retained Flaig to prepare her will. She told defendant that she wanted her entire estate to pass to her two daughters. She also informed Flaig that she planned to remarry in a few weeks. The will purported to leave the entire estate to the plaintiffs. However, the will did not mention the testatrix' husband to be, except that it named him as executor. Under a California statute a spouse can be disinherited only if ". . . the spouse is provided for in the will, or in such a way mentioned therein as to show an intention not to make such a provision; and no other evidence to rebut the presumption of revocation can be received." Cal.Probate Code § 70 (West). Thus, in the *Heyer* case, once the will was admitted to probate it was evident to the sisters that

the will was drafted in such a way as to reduce their share of their mother's estate—a result which was clearly contrary to her intentions.

In the instant case, plaintiff could not have known that the particular clause in the will was ineffective until the court determined that it was void. It would be strange indeed to require a potential beneficiary under a will to file suit alleging that the portion of the will which apparently benefitted him is void before the validity of the provision has been determined by a court. Yet, this is what the majority seems to require.

Aside from the factual dissimilarities between *Heyer* and the case at bar, an examination of California cases decided since *Heyer* indicates that the majority has erroneously relied on California law to support the proposition that the statute of limitations in the instant case began to run at the time of death of the testatrix.

In *Heyer*, the California Supreme Court began to depart from the majority rule which sets the commencement of the statute of limitations at the time of the negligent act. The Court began to acknowledge, without fully accepting, the emerging "discovery rule". According to the discovery theory, the statute of limitations in such cases runs from the date the negligence was, or should have been, discovered.

The California Court did not mention the discovery rule in the text of *Heyer*; rather, it alluded to it in a footnote. There the Court stated that "[t]he judicial rule against postponed accrual of the statute of limitations in legal malpractice actions is set upon a tenuous basis." *Heyer, supra,* at 223, fn. 7, 47 Cal.Rptr. at 233, fn. 7, 449 P.2d at 168, fn. 7.

The California Court did not fully embrace the discovery rule until later. In *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* (1971) 6 Cal.3d 176, 98 Cal.Rptr. 837, 846, 491 P.2d 421, 430, Justice Tobriner concluded that "in an action for professional malpractice against an attorney, the cause of action does not accrue until the plaintiff knows, or should know, all material facts essential to show the elements of that cause of action." *Neel,* rather than *Heyer,* is the key California case with respect to the statute of limitations in legal malpractice actions. See also *Horne v. Peckham,* (1979) 97 Cal.App.3d 404, 158 Cal. Rptr. 714.

In the case at bar, Dwyer had no way of knowing whether the challenged provision was unenforceable until the Probate Court rendered its decision. The clause provided that Angelicchio, the testator's business partner, would continue to employ plaintiff until she retired. This much, Angelicchio did. Not until she retired did she learn that the portion of the clause requiring Angelicchio to pay her $500.00 a month after she retired might be unenforceable. And until the provision was declared void, she had every reason to claim validity of the clause.

Faced with a similar factual situation, the Supreme Court of New Mexico applied the discovery doctrine. *Jaramillo v. Hood,* (1979) 93 N.M. 433, 601 P.2d 66. As in the case at bar and *Heyer, Jaramillo* involved a suit by a disappointed beneficiary against the drafter of a will. The will was prepared on April 28, 1967. The testator died on October 6, 1967. On November 22, 1967, the will was admitted to probate. Appellant changed attorneys on January 22, 1968, March 26, 1969, and August 2, 1971. The order admitting the will to probate was set aside *nunc pro tunc* on April 14, 1969. Appellant did not file her complaint until May, 1977. As to the date when the statute of limitations began to run, the Court stated:

> The harm or damage in this case arose at the time the testatrix died. However, the cause of action did not accrue until the harm or damage was ascertainable or discoverable. In this case appellant was in a position to ascertain or discover the harm or damage to her as a result of the alleged defect in the execution of the decedent's will each time she changed attorneys, and also at the time the court set aside the order admitting the will to probate. *Jaramillo, supra,* at 434, 601 P.2d 67.

While it appears that the majority of states adhere to the rule that the statute of limitations on a legal malpractice claim begins to run from the date the negligent act occurred, 18 A.L.R.3d 978 (1968), several states, besides California and New Mexico, have recognized the discovery rule. *Niedermeyer v. Dusenberry*, (1976) 275 Or. 83, 549 P.2d 1111; *Cameron v. Montgomery*, (1975) Iowa, 225 N.W.2d 154; *Succession of Killingsworth*, (1972) La.App., 270 So.2d 196; *Hendrickson v. Sears*, (1974) 365 Mass. 83, 310 N.E.2d 131; *Kohler v. Woollen, Brown & Hawkins*, (1973) 14 Ill.App.3d 455, 304 N.E.2d 677; *Peters v. Simmons*, (1976) 87 Wash.2d 400, 552 P.2d 1053; *Edwards v. Ford*, (1973) Fla., 279 So.2d 851; *Sorenson v. Pavlikowski*, (1978) Nev., 581 P.2d 851; *McKee v. Riordon*, (1976) 116 N.H. 729, 366 A.2d 472; *Mumford v. Staton, Whaley and Price*, (1969) 254 Md. 697, 255 A.2d 359.

The Supreme Court of Appeals of West Virginia has made perhaps the most poignant statement by a court justifying the application of the discovery rule:

> We are inclined to agree with the defendant that it is the majority view in this country that as a general proposition the statute of limitations begins to run from the date of the commission of the act of professional malpractice rather than from the date of discovery. However, we do not agree with the defendant's cavalier dismissal from consideration the cases which subscribe to the so-called minority view. We do not equate an "overwhelming number of cases", as expressed in the defendant's brief, with justice and right. *Family Savings & Loan, Inc. v. Ciccarello*, (1974) W.Va., 207 S.E.2d 157.

Likewise, in the instant case, appellant blithely states that the holding in *Price v. Holmes*, (1967) 198 Kan. 100, 422 P.2d 976, which is but one case where the discovery rule was applied in a legal malpractice situation, "is an aberrational holding" and that "cases from other jurisdictions . . . reveal that *Price v. Holmes* is an aberrational result." I cannot agree with this assertion. Whether the impingement occurred when the Probate Court rendered its decision or

was discovered at that time is of little moment; in either event the statute of limitations in the case at bar should not be deemed to commence until the date the clause in the will was declared void. Accordingly, I dissent from the decision of the majority insofar as it holds that the statute of limitations began to run from the date of death of the testator.

PIVARNIK, J., concurs.