Richard L. PEAKE, Appellant
(Plaintiff Below),

v.

**INTERNATIONAL HARVESTER COMPANY, Appellee (Defendant Below).**

**No. 4–385A76.**

Court of Appeals of Indiana,
Fourth District.

Feb. 18, 1986.

Rehearing Denied April 4, 1986.

Kevin L. Likes, Grimm & Grimm, P.C., Auburn, for appellant.

Edward J. Liptak, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellee.

CONOVER, Judge.

Plaintiff-Appellant Richard L. Peake (Peake) appeals the entry of summary judgment in favor of defendant-appellee International Harvester Company (International Harvester) determining Peake's claims for wrongful appropriation of Peake's suggestion box idea for improving the efficiency of a truck production line were barred by the applicable statute of limitations.

Affirmed.

ISSUES

This appeal presents the following issues:

1. Whether the existence of a collective bargaining agreement constitutes a written contract of employment between a union member-employee and the employer.

2. Whether a suggestion plan for new ideas from plant employees is a "privilege" of such employment.

3. Whether Peake's claims were barred by a two year statute of limitations applicable to claims arising out of the employer-employee relationship.

FACTS

While employed by International Harvester, Peake submitted a new idea in writ-

ing to the company for placing truck cabs on the truck assembly line, using a New Ideas Suggestion Blank as he was required to do in such cases. International Harvester's New Ideas Suggestion Program was open to all eligible non-managerial employees. Peake was eligible at the time. Under the plan, any idea so submitted was kept on file by the company for one year after rejection. The submitting employee during that time retained his claim to it, but then only had 30 days to resubmit the idea to retain further claim to it. Peake never received written notice his idea had been rejected.

On October 26, 1977, four months after Peake left International Harvester's employ, Peake's then attorney wrote International Harvester about Peake's cab handling suggestion. His letter said Peake had been informed his idea was shelved by the company in 1974 because it was too costly, but a recent article indicated his idea later had been implemented. The letter ended with a demand for compensation.

An answering letter from the company said Peake did not make a timely resubmission of his suggestion as required by the suggestion plan; and, even if Peake's idea had been used, he was barred from collecting a reward.

Peake filed a complaint for compensatory and punitive damages against International Harvester on July 15, 1981.

## DISCUSSION AND DECISION

Our standard of review in summary judgment cases is well known. Under Ind. Rules of Procedure, Trial Rule 56, summary judgment is appropriate only where there are no issues of material fact and the moving party is entitled to judgment as a matter of law. When we review the grant of a motion for summary judgment we stand in the shoes of the trial court. We must determine whether any genuine issue of material fact exists and whether the law was correctly applied by the trial court. We must liberally construe all the evidence and reasonable inferences arising therefrom in favor of the non-movant and resolve any doubt as to the existence of a genuine issue against the proponent of the motion. A fact is material if it facilitates resolution of any of the issues involved. On appeal, the trial court's judgment will be affirmed on any theory or basis found in the record which supports the trial court's judgment, even if it was originally grounded upon an erroneous theory of law. A fact is "material" for summary judgment purposes, if its resolution is decisive of the action or of a relevant secondary issue. *Penwell v. Western & Southern Life Ins. Co.* (1985), Ind.App., 474 N.E.2d 1042, 1043–1044.

### I.

In reaching its determination, the trial court applied the provisions of IND.CODE 34-1-2-1.5 which became effective on August 29, 1977. It reads as follows:

> Employment Agreement not in writing. —All actions relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary) shall be brought within two (2) years of the date of the act or omission complained of.

The trial court determined Peake's idea had been rejected by the company as early as April 1, 1975,[1] and further found "[Peake] knew that his idea was rejected long before October 26, 1977," without finding the precise date upon which the company rejected his idea about truck body placement on the assembly line. Finally, the trial court found Peake's complaint had been filed "more than two (2) years later" and was thus barred by the limitation contained in I.C. 34-1-2-1.5.

Peake first argues that statute is inapplicable in this case because the terms,

---

1. The trial court erroneously based this finding upon an exhibit attached to plaintiff Peake's complaint, a written rejection slip sent by the company to Peake regarding another idea Peake had submitted under the New Ideas plan, not the idea which is the subject of this litigation.

conditions, and privileges of his employment were governed by the written collective bargaining agreement between his union, the U.A.W. and International Harvester. We disagree. It is uncontested Peake was an hourly employee hired under an oral contract.

A collective bargaining agreement is not a "written contract" when the applicability of a statute of limitations to the claims of an employee hired under an oral contract of employment is being considered. *International Union, U.A.A. & A.I. Workers of America (UAW), AFL–CIO v. Hoosier Cardinal Corp.* (1965, C.A. 7) 346 F.2d 242, aff'd., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192. In that case, the U.A.W. sought to recover vacation pay for the company's employees. Rejecting the union's argument a 20 year statute of limitations for actions on written contracts rather than Indiana's 6 year statute regarding accounts and contracts not in writing applied to those facts, the Seventh Circuit said

... plaintiff's action in the district court was based upon the contract of employment between the individual employees and defendant. There is no evidence or contention that these employment contracts were ever reduced to writing. It was for wages due under these employment contracts that the present action was brought....

*Hoosier Cardinal,* 346 F.2d at 245. In affirming the United States Supreme Court said

Proof of the breach and of the measure of damages, however, both depend upon proof of the existence and duration of separate employment contracts between the employer and each of the agreed employees.

*Hoosier Cardinal,* 383 U.S. at 706, 86 S.Ct. at 1113. In other words, although the provision concerning the company's payment of vacation pay to its employee-members was embodied within the provisions of the written collective bargaining agreement, the determination of which statute of limitations applied was to be determined by whether each employee's contract of hiring

was oral or written. Because all such contracts were oral in nature, all claims were barred because the shorter statute of limitations applied.

The same principle applies here. Because Peake's employment contract was oral, I.C. 34–1–2–1.5 applies in this case.

## II.

■ Conceding for the purpose of argument his employment contract was oral, Peake next asserts his action is based upon a contract separate from his contract of employment with the company, namely, a written contract between himself and the company based upon the written provisions contained in the New Ideas Suggestion Blank. In other words, the New Ideas Suggestion program "is not a term, condition, or privilege of his employment." Again, we disagree.

The terms for submittal of New Ideas under the company's plan are contained on the reverse side of the Suggestion Blank form. A portion of these terms provides

Who is Eligible?

Generally, all non-managerial employes [sic] are eligible to participate, ...

Only because Peake was an employee at the time, was he eligible to participate in International Harvester's New Ideas Suggestion Plan. While the format of this plan requires the employee to submit his idea in the form of a written unilateral offer subject to acceptance or rejection in writing by the company, the right to submit such a proposal is still a "privilege" of Peake's employment even though his offer was in writing. Because Peake's employment was an essential element of his causes of action, I.C. 34–1–2–1.5 applies, rather than I.C. 34–1–2–2(6), as Peake contends. *Kemper v. Warren Petroleum Corp., Inc.* (1983), Ind.App., 451 N.E.2d 1115, 1117.

■ Peake next asserts his causes of action sounding in quasi-contract and unjust enrichment are not barred by I.C. 34–1–2–1.5. Given our current emphasis on substance over mere form, artful attempts

to avoid applicable statutes of limitation by technical pleading consistently have been rebuffed by our Courts. Substance prevails over form in this area. *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281, 286–287. Peake here seeks damages for what he considers a wrongful appropriation of his idea by his former employer. Because his right to submit the idea to International Harvester for its consideration was a "privilege" of his employment, I.C. 34–1–2–1.5 applies, regardless of the various causes of action alleged in Peake's complaint. *Shideler*, 417 N.E.2d at 286.

### III.

Finally, Peake argues the trial court incorrectly determined his cause of action accrued on the date the company rejected his truck cab placement idea. He says his cause of action would not accrue until International Harvester fully implemented his idea and failed to properly compensate him under the plan's terms for payment therefor. Because there is no evidence as to the specific date upon which his cause of action accrued, Peake claims the trial court's judgment must be reversed because that date is unproved at this time. While we agree the trial court incorrectly determined the date upon which Peake's cause of action accrued, we disagree the trial court's judgment must be reversed.

Our Supreme Court, in a 3 to 2 decision, recently discussed the time at which a cause of action accrues in the following language:

> For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred.
>
> ... ["]Except in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. Consequential damages may flow later from an

injury too slight to be noticed at the time it is inflicted. No new cause of action accrues when such consequential damages arise. So far as such consequential damages may be reasonably anticipated, they may be included in a recovery for the original injury, though even at the time of the trial they may not yet exist. When substantial damage may result from any wrong affecting the person or property of another, a cause of action for such wrong immediately accrues.["] ... "Considering the function of a Statute of Limitations as a device for repose, a potential defendant's equities are the same whether the plaintiff knows of his condition or not. Repose is as beneficial to society in the one case as in the other."

*Shideler*, 417 N.E.2d at 289–291. *Accord, see, Monsanto Co. v. Miller* (1983), Ind. App., 455 N.E.2d 392; *Scates v. State* (1978), 178 Ind.App. 624, 383 N.E.2d 491.

■ Assuming International Harvester wrongfully appropriated Peake's new idea, the question is when did his cause of action accrue? Clearly, under the above-stated rule it was the day the company placed the first truck body on its assembly line after having utilized the components of Peake's idea to so place them. It was then "liability for wrong [arose] even though the injured party [was] ignorant of the existence of the wrong or injury." *Shideler*, 417 N.E.2d at 289. The trial court incorrectly bottomed its determination upon the fact Peake "knew that his new idea was rejected on or before October 26, 1977." Knowledge of the plaintiff has nothing to do with the accrual of his cause of action in non-fraud cases, under *Shideler*.

While the precise date cannot be determined, implementation began sometime before May 7, 1976. Rhetorical paragraph 6 of plaintiff's complaint reads in part

> ... sometime prior to May 7, 1976, his idea for a more cost efficient method of "cab handling" which the Defendant had in its possession, was implemented in exact conformity with his idea.

While I.C. 34–1–2–1.5 did not become effective until August 29, 1977, the reasonable

time within which Peake could have filed his complaint was two years thereafter, as a matter of law. *Kemper,* 451 N.E.2d at 1117. Peake had until August 29, 1979, to file his complaint. It was filed July 15, 1981, almost two years too late.

We find no reversible error.

Affirmed.

YOUNG, P.J., and MILLER, J., concur.