

## FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**JOHN C. THEISEN**
**NATHANIEL O. HUBLEY**
Theisen Bowers & Associates, LLC
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES:

**SETH B. LEWIS**
Seth B. Lewis Law Office, LLC
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CUSTOM RADIO CORP., | ) | |
| CUSTOM MANAGEMENT | ) | |
| GROUP, INC., RICHARD | ) | |
| YARGER and ROBERT | ) | |
| O'BRIEN, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1303-CC-143 |
| | ) | |
| ACTUARIES & BENEFIT | ) | |
| CONSULTANTS, INC., and | ) | |
| JOHN M. FOGLE, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-1010-CC-266

**October 9, 2013**

**BRADFORD, Judge**

## CASE SUMMARY

Appellants-Plaintiffs Custom Radio Corp.; Custom Management Group, Inc.; Richard Yarger; and Robert O'Brien appeal the trial court's grant of summary judgment in favor of Appellees-Defendants Actuaries & Benefit Consultants, Inc. and John Fogle. From 1995 to 2004, Appellees provided consulting services to Appellants with respect to certain Welfare Benefit Plans investing in cash value life insurance. The plans were designed to comply with 26 U.S.C. § 419(A)(f)(6) so that Appellants' contributions thereto would be tax-deductible. In July of 2003, however, the Internal Revenue Service ("IRS") issued final regulations with regard to subsection 419(A)(f)(6), which rendered Appellants' plans non-compliant and their contributions retroactively taxable. A subsequent IRS audit revealed that Appellants owed nearly $750,000 in back taxes, penalties, and interest, but, on October 20, 2008, Appellants entered into a settlement agreement with the IRS, whereby the tax penalties were waived.

On October 19, 2010, Appellants filed suit against Appellees, claiming negligent provision of consulting services and breach of oral contract. Appellees moved for summary judgment on the basis that the statutes of limitation had expired. The trial court determined that Appellants' causes of action accrued and their respective statutes of limitation began to run on April 30, 2004, by which date Appellants allegedly knew that their Welfare Benefit

2

Plans were non-compliant with 26 U.S.C. § 419(A)(f)(6). On appeal, Appellants argue that their causes of action did not accrue until October 20, 2008, the date on which they reached their settlement agreement with the IRS and thereby discovered their damages.

We conclude that Appellants' causes of action accrued and the statutes of limitation began to run on the date Appellants knew or, through ordinary diligence, could have discovered that their Welfare Benefit Plans were non-compliant with subsection 419(A)(f)(6) and that their plan contributions were retroactively taxable. But finding a genuine issue of fact as to whether Appellants knew or could have known this information by April 30, 2004, we hold that summary judgment is inappropriate. The judgment of the trial court is reversed and remanded.

## FACTS AND PROCEDURAL HISTORY[1]

Yarger and O'Brien are the owners and operators of Custom Radio Corp. ("Custom Radio"), a company that supplies the truck and bus market with audio and video systems. Fogle is the President of and a consultant with Actuaries & Benefit Consultants, Inc. ("ABC"), a company that specializes in designing, installing, and administering retirement plans. From 1995 to 2006, ABC and Fogle provided consulting services to Yarger and O'Brien with respect to Custom Radio. Throughout the course of this business relationship, Yarger was the point of contact at Custom Radio, and O'Brien was relatively uninvolved.

In late 1995, Fogle discussed with Yarger the purchase of cash value life insurance to

---

[1] On July 29, 2013, Appellants filed a motion to strike certain portions of Appellees' Appendix and Appellees' Brief. We have reviewed the complained of material and, finding it to have no bearing on our decision in this matter, deny Appellants' motion as moot.

fund a buy-sell agreement between Yarger and O'Brien with respect to Custom Radio. Fogle advised that using a Welfare Benefit Plan in compliance with 26 U.S.C. § 419(A)(f)(6) would enable Yarger and O'Brien to claim tax deductions for their plan contributions (*i.e.*, their life insurance premiums). Fogle further advised Yarger and O'Brien to establish a management company for Custom Radio, such that only a select few employees could benefit from the Welfare Benefit Plan. Yarger and O'Brien established Custom Management Group, Inc. ("Custom Management") for this purpose and named themselves as the company's only employees.

In January of 1996, Custom Management enrolled in a Welfare Benefit Plan known as the Prime Financial Multiple Employer Welfare Benefit Fund (the "Prime Plan"). At the time, the IRS had issued no regulations regarding 26 U.S.C. § 419(A)(f)(6), but the sponsor of the Prime Plan believed that it complied with that subsection. In June of 1997, however, the United States Tax Court issue its decision in *Booth v. Commissioner*, 108 T.C. 524 (1997), striking down the Prime Plan as non-compliant with subsection 419(A)(f)(6).

In February of 1998, in response to the *Booth* decision, Fogle recommended that Custom Management switch to a different Welfare Benefit Plan, the National Benefit Plan and Trust (the "National Plan"). At the time, the IRS still had issued no regulations regarding 26 U.S.C § 419(A)(f)(6), but, like with the Prime Plan, the sponsor of the National Plan believed it to comply with that subsection. On July 17, 2003, however, the IRS issued final regulations declaring Welfare Benefit Plans investing in cash value life insurance—like the Prime and National Plans—to be non-compliant with subsection 419(A)(f)(6).

4

The final regulations included the following provision regarding their effective date:

> Except as explained below, these regulations—which generally clarify existing law—are effective for contributions paid or incurred in taxable years of an employer beginning on or after July 11, 2002. For contributions made before this effective date, the IRS will continue applying existing law, including the analysis set forth in Notice 95-34 and relevant case law. Thus, taxpayers should not infer that a contribution that would be nondeductible under the regulations would be deductible if made before that date. In this regard, taxpayers are reminded that the IRS has already identified transactions that are the same as or substantially similar to the transactions described in Notice 95-34 as *listed transactions* for purposes of Sec. 1.6011-4T(b)(2) of the Temporary Income Tax Regulations and Sec. 301.6011-2T(b)(2) of the Temporary Procedure and Administration Regulations[.]

Appellants' App. p. 61 (emphasis in original). As a result, Yarger's and O'Brien's contributions to the National Plan were retroactively taxable.[2] (Appellants' App. 43-44, 46).

In February of 2004, in response to the IRS's final regulations, Fogle recommended that Custom Management switch to a single employer plan under 26 U.S.C. § 419(E). Custom Radio's CPA agreed with Fogle's recommendation, and Yarger decided to have the CPA handle the transaction. In April of 2004, Yarger informed Fogle that his services with respect to Custom Management's Welfare Benefit Plan were no longer needed.

In early 2007, the IRS notified Yarger and O'Brien that it would be conducting an audit of Custom Management's taxes. In March of 2008, the IRS completed its audit and reported to Yarger and O'Brien that they owed $291,578.82 and $441,023.76, respectively, in back taxes, penalties, and interest. Yarger and O'Brien, however, were able to negotiate

---

[2] It is unclear from the record whether this retroactivity reached all of Yarger's and O'Brien's contributions to the National Plan and whether it reached any of their contributions to the Prime Plan. The absence of this information, however, has no bearing on our decision in this matter.

5

settlements with the IRS, whereby the tax penalties were waived in exchange for their payment of the back taxes and interest. The IRS prepared settlement agreements reflecting these terms on September 25, 2008, which agreements O'Brien and Yarger signed on October 19 and 20, 2008, respectively.

On October 19, 2010, Yarger and O'Brien[3] filed a complaint against ABC and Fogle, claiming negligent provision of consulting services and breach of oral contract. ABC and Fogle answered the complaint, asserting the affirmative defense that both claims were barred by their respective statutes of limitation.[4] On November 15, 2012, ABC and Fogle moved for partial summary judgment with respect to their statute of limitation defense. Specifically, ABC and Fogle argued that Yarger and O'Brien's causes of action accrued as early as July 17, 2003, the date on which the IRS issued its final regulations with regard to 26 U.S.C. § 419(A)(f)(6), and, at the latest, on April 30, 2004, the date by which Yarger and O'Brien allegedly knew that their Welfare Benefit Plans were non-compliant with that subsection. Yarger and O'Brien responded in opposition to summary judgment, arguing that their causes of action accrued on October 20, 2008, the date on which they entered into their settlement agreements with the IRS.

The trial court heard argument on ABC and Fogle's motion on January 28, 2013, and, on March 1, 2013, granted summary judgment in their favor. In its order, the court

---

[3] We refer to Appellants collectively as "Yarger and O'Brien" for the remainder of this opinion.

[4] Indiana Code section 34-11-2-4 requires Yarger and O'Brien's negligence claim to have been commenced within two years after that cause of action accrued. Indiana Code section 34-11-2-7 requires their breach of oral contract claim to have been commenced within six years of its accrual.

specifically found as follows:

> 10. In the instant case, while it is perhaps arguable whether the Statutes of Limitations applicable to this case began to run on July 17, 2003, it is beyond doubt that Yarger and O'Brien knew that Section 419(A)(f)(6) Welfare Benefit Plans had been rendered "experience rated" and had become "listed transactions" because by April 30, 2004, they had been told of those facts by Fogle himself during a meeting or meetings with at least one of their accountants, and had acted independently to adopt a Single-Employer Plan (the Arrowhead Trust), without bothering to inform Fogle.
>
> 11. The Court, therefore, finds that each of the applicable Statutes of Limitations in this case began to run on April 30, 2004, and thus expired as a matter of law on April 30, 2006[,] as to Plaintiffs' negligence claim and on April 30, 2010[,] as to Plaintiffs' breach of oral contract claim.

Appellants' App. p. 19. Where appropriate, additional facts will be supplied below.

## DISCUSSION AND DECISION

Yarger and O'Brien challenge the trial court's grant of summary judgment in favor of ABC and Fogle. The standard of appellate review of a summary judgment ruling is the same as that used in the trial court. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008). In reviewing the designated evidence, we construe all facts and reasonable inferences drawn therefrom in favor of the nonmoving party. *Boggs*, 730 N.E.2d at 695. And where, as here, the trial court enters findings of fact and conclusions of law in support of its judgment, such special findings are not binding on appeal. *Whorley*, 891 N.E.2d at 608.

## I. Whether Appellants' Causes of Action Accrued When They Knew or Could Have Discovered that Their Welfare Benefit Plans Were Non-Compliant

Yarger and O'Brien argue that the trial court erred in determining that their causes of action accrued on the date by which they allegedly knew that their Welfare Benefit Plans were non-compliant with 26 U.S.C. § 419(A)(f)(6). Under Indiana's discovery rule, "a cause of action accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 843 (Ind. 1992). "In other words, a cause of action accrues … when the resultant damage of a negligent act is susceptible of ascertainment." *Page v. Hines*, 594 N.E.2d 485, 487 (Ind. Ct. App. 1992). This rule applies to both tort and contract claims. *Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 449 (Ind. Ct. App. 2003).

Yarger and O'Brien claim their causes of action did not accrue until they reached their respective settlement agreements with the IRS. Prior to that date, Yarger and O'Brien contend, their damages were not ascertainable. Yarger and O'Brien, however, confuse "damage," a requisite element of any tort, with "damages," a measure of compensation. *See Shideler v. Dwyer*, 417 N.E.2d 281, 289 (Ind. 1981). "For a wrongful act to give rise to a cause of action and thus to commence the running of the statute of limitations, it is not necessary that the extent of the damage be known or ascertainable but only that damage has occurred." *Id.* at 281-87 (holding devisee's damage from a negligently drafted will, if any, occurred at the moment testator died rather than upon probate court's decree that the devise was void); *see Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008) (holding insureds' claim against insurance agent for negligent procurement of coverage accrued on the date insureds

8

could have discovered they were underinsured rather than the date that fire destroyed their property).

Here, the damage resulting from ABC and Fogle's alleged negligent provision of consulting services and their breach of oral contract, if any, was Yarger's and O'Brien's retroactive tax liability for unauthorized deductions associated with their Welfare Benefit Plans. This liability arose on the date the IRS published its final regulations regarding 26 U.S.C. § 419(A)(f)(6), declaring Welfare Benefit Plans investing in cash value life insurance non-compliant with that subsection. Therefore, we hold that Yarger and O'Brien's causes of action accrued and the statutes of limitation began to run on the date they knew or, through the exercise of ordinary diligence, could have discovered that their Welfare Benefit Plans were non-compliant with subsection 419(A)(f)(6) and that their plan contributions were retroactively taxable. *See Whorley*, 891 N.E.2d at 610 (holding heir's breach of fiduciary duty claim against estate's court appointed guardian, who never informed heir about estate's ineligibility for Special Use Valuation and its corresponding favorable tax regime, accrued on the date the IRS notified heir that estate's farmland had been denied Special Use Valuation and incurred increased tax liabilities).

## II. Whether Appellants Knew or Could Have Discovered that Their Welfare Benefit Plans Were Non-Compliant by April 30, 2008

Yarger and O'Brien argue that there is a genuine issue of material fact as to whether they knew or could have discovered by April 30, 2004, that their Welfare Benefit Plans were non-compliant with 26 U.S.C. § 419(A)(f)(6). Based on our review of the designated evidence, we agree. During his deposition, Fogle testified that, in February of 2004, he told

9

Yarger that the IRS had issued final regulations with respect to subsection 419(A)(f)(6) that had rendered the National Plan "experience rated" and contributions to it "listed transactions." Appellants' App. p. 47. Yarger, however, testified in his deposition that he was unaware that the IRS had issued final regulations with respect to subsection 419(A)(f)(6), and that the terms "experience rated" and "listed transactions" did not mean anything to him until Custom Management was audited in 2007. The parties also dispute whether Fogle told Yarger there would be no adverse tax consequences if Custom Management switched to a single employer plan.

From this evidence, we conclude there is a genuine issue of material fact as to whether Yarger and O'Brien knew or, through ordinary diligence, could have discovered by April 30, 2004, that their Welfare Benefit Plans were non-compliant with 26 U.S.C. § 419(A)(f)(6) and their contributions thereto, retroactively taxable. When application of a statute of limitation rests on questions of fact, it is generally an issue for a jury to decide. *Wehling*, 586 N.E.2d at 843. Therefore, summary judgment premised on the running of the statute of limitations is inappropriate.

The judgment of the trial court is reversed and remanded.

BAILEY, J., and MAY, J., concur.